COMMONWEALTH vs. MARVIN SMITH.

Suffolk. May 6, 1992. - July 27, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Homicide. Practice, Criminal*, Required finding. *Joint Enterprise.*

At the trial of a murder indictment there was insufficient evidence of the
   mental state required for the commission of premeditated murder to
   sustain the defendant's conviction on a theory of joint venture where,
   even if the jury could have warrantably found that the defendant had
   driven the "getaway car" from the scene of the crime, they could only
   have speculated on whether the defendant knew that the alleged coven-
   turer was armed and planned to murder the victim and whether the
   defendant shared the necessary intent to commit a premeditated mur-
   der. [278-282]

INDICTMENT found and returned in the Superior Court De-
partment on April 11, 1988.

The case was tried before *Robert V. Mulkern*, J.

*Daniel Patrick Leonard* (*Terence K. Ankner* with him) for
the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the
Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the
defendant, Marvin Smith, of murder in the first degree. The
Commonwealth proceeded against the defendant on a joint
venture theory, asserting that the defendant participated
with Jessie Lewis in the murder of the victim, Lee E. Taylor.
Lewis and Smith were tried together.[1] The defendant makes
several arguments on appeal. We need not discuss all of the
arguments because we agree with the defendant that the evi-

---

[1]Lewis was also convicted by the jury of murder in the first degree and
since has died. Lewis's conviction was vacated and the indictment against
him dismissed on December 12, 1991.

dence presented by the Commonwealth was insufficient to warrant his conviction, and, consequently, his motion for a required finding of not guilty must be allowed.

The evidence in the Commonwealth's case-in-chief viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Anderson*, 396 Mass. 306, 311 (1985), permitted the jury to find the following facts. Sometime during the morning or early afternoon of February 18, 1988, the day of the murder, the defendant came into Lawson's Barbershop in the Roxbury section of Boston, the scene of the murder. The defendant was a regular customer of Lawson's. At that time, the shopowner, Robert Lawson, the defendant's regular barber, was too busy to cut the defendant's hair, so the defendant left.

At 3 P.M. on the same day the defendant and the codefendant Jessie Lewis, who was his cousin, went to Boch Motors in Norwood to obtain an inspection sticker for the defendant's automobile, a maroon 1986 Toyota Cressida, which the defendant had purchased from Boch Motors on February 15, 1988, three days earlier. The computer printout of the results of the emissions inspection of the defendant's automobile, which was introduced in evidence at trial, listed the registration number as 369NHL.

Later that day, at some time between 3 and 3:30 P.M., the defendant returned to the barbershop, and parked his automobile in front of the shop. Robert Lawson was still busy, but told the defendant that he could cut his hair if the defendant waited. The victim was in the barbershop at 4 P.M., standing next to the barber's chair of another barber, Jamerilla Lawson, the shopowner's nephew. There were anywhere from eight to twenty people in the shop at this time. Lewis came into the shop, drew a handgun from inside his belt, and walked toward the victim. There was conflicting testimony as to whether Lewis was wearing eyeglasses at the scene of the murder. On seeing Lewis, the victim attempted to grab Jamerilla Lawson, who pulled away. The victim then ran to the back of the shop and grabbed Robert Lawson. Others fled when they saw or heard that Lewis had a handgun.

Lewis walked toward the back of the shop, pursuing the victim. Robert Lawson struggled to get free of the victim's grasp, and both men fell to the floor. Lewis then shot the victim in the head several times.

Just prior to the murder, a customer of the barbershop pulled up to the shop in a taxicab. He heard three or four gun shots coming from inside the shop and saw people walking and running out of the shop. He also saw a small red or burgundy automobile which he called a "Toyota" or "Maxima" parked in front of the shop. He saw Lewis and a younger man leave the shop. The younger man entered the driver's side of the automobile, pushed open the passenger side door, and said to Lewis, "Hurry up. Get in the car."[2] The witness saw this automobile drive off "fast." Another customer, who had fled outside after he saw Lewis draw the handgun, saw someone walk out of the shop "casually," after the shooting had stopped, and get into an automobile parked in front of the shop. This witness stated that the automobile was new, brown or maroon, and "might have been foreign."

On February 19, 1988, Boston police Sergeant Detective Charles H. Horsley interviewed the defendant in the presence of an attorney at Horsley's office in South Boston. The defendant appeared at the interview voluntarily, and gave an account of his whereabouts the day of the murder. The defendant stated that he had gone to his mother's home that morning to retrieve some documents pertaining to his automobile, and that he had arrived alone at Boch Motors at approximately 2 P.M. The defendant also told Horsley that he arrived at the barbershop sometime between 3 and 3:30 P.M., and that he parked his automobile directly in front of the shop. Horsley testified that the defendant gave him a motor vehicle registration, which Horsley photocopied and returned.[3] Horsley then administered Miranda warnings, and

---

[2] A number of witnesses identified Lewis as the shooter, whom all described as an older black man. This witness described the driver as "younger" than Lewis. The defendant is black also.

[3] A photocopy admitted in evidence indicated that the defendant owned a 1986 Toyota Camry with license plate number 369NHM. The color of the

the defendant told him that his previous account had not been completely truthful in that he had not been alone the entire day. Smith did not admit that he had been with Lewis. Counsel for the defendant then terminated the interview. When the defendant attempted to leave, Horsley placed him under arrest.

Horsley also testified that on February 25, 1988, he saw the defendant's automobile parked on the street. The vehicle was a maroon Toyota Cressida, with registration number 369NHM, and its dealership label indicated that it had been purchased at Boch Motors.

At the conclusion of the Commonwealth's evidence, the defendant rested and moved for a required finding of not guilty on the ground that the Commonwealth had not introduced sufficient evidence to warrant the jury in finding beyond a reasonable doubt that he had participated as a joint venturer with Lewis in the murder. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). The judge denied this motion, and the jury found the defendant guilty of murder in the first degree by reason of deliberately premeditated malice aforethought. The defendant renewed his motion for a required finding after the jury's verdict was returned. The renewed motion was also denied.

"The essential question in evaluating the denial of a motion for a required finding of not guilty is whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' *Commonwealth v. Vellucci*, 284 Mass. 443, 445 (1933)." *Commonwealth v. Stewart*, 411 Mass. 345, 349-350 (1991), quoting *Commonwealth v. Clary*, 388 Mass. 583,

---

automobile was not listed; the license plate number and model name are different from those on the computer printout of the vehicle which passed the emission test.

588-589 (1983). "[I]t is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense." *Commonwealth v. Latimore*, 378 Mass. 671, 677 (1979). "A joint venturer, is 'one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime." *Commonwealth v. Stewart, supra* at 350, quoting *Commonwealth v. Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). In this case, the requisite mental state is that for murder in the first degree, deliberately premeditated malice aforethought. *Commonwealth v. Soares, supra*. See *Commonwealth v. Fickett*, 403 Mass. 194, 198 (1988); *Commonwealth v. Mandile*, 403 Mass. 93, 99 (1988). Thus, the evidence viewed in a light most favorable to the Commonwealth must be sufficient to warrant a jury's finding beyond a reasonable doubt that the "defendant was (1) present at the scene of the crime, (2) with knowledge that [Lewis] intend[ed] to commit the crime or with intent to commit [the] crime, and (3) by agreement [was] willing and available to help [Lewis] if necessary." *Commonwealth v. Mandile, supra* at 99-100, quoting *Commonwealth v. Bianco*, 388 Mass. 358, 366, *S.C.,* 390 Mass. 254 (1983).

The Commonwealth argues that the defendant knowingly and intentionally participated with Lewis in the murder either by going to the barbershop to find and point out the victim to Lewis or by driving the get-away car (or by doing both).

There is no support for the theory that the defendant played a role in the murder by identifying the victim for Lewis. No witness identified the defendant as the man the victim ran to and grabbed in an effort to avoid Lewis. That man was identified by all the witnesses except one as the owner of the barbershop, Robert Lawson.[4] Several witnesses

---

[4]This witness was unable to identify the person who was struggling with the victim just before Lewis shot him. The Commonwealth relies on the testimony of this witness to suggest that two struggles might have taken

testified that the defendant had entered the barbershop at some time during the hour before the murder took place, and the defendant's regular barber testified that he told the defendant to wait for a haircut. Two of the prosecution's witnesses testified that the defendant left the shop prior to the murder, and others testified that they were not sure whether the defendant was in the shop at the time of the murder. There was no testimony that the defendant and Lewis arrived at the barbershop together, that Lewis arrived in the defendant's automobile, or in any automobile, or that Lewis and the defendant were ever present in the shop simultaneously. The only time the defendant and Lewis were seen together was at Boch Toyota, approximately one hour before the murder.

The contention that the defendant was the driver of the get-away car is of questionable probative force. While there was evidence that the defendant and Lewis had been together at Boch Motors in the defendant's car about one hour before the murder, there was no evidence clearly identifying the defendant's car as the one Lewis entered after the murder, and no identification of the defendant as the driver. The only witnesses who testified to Lewis's departure after the murder did not know the registration number of the automobile he entered and were uncertain as to the make and precise color of the automobile they saw. Moreover, while one of these witnesses positively identified Lewis as the passenger, he stated only that the driver of the get-away car was a "younger" man. The other witness to Lewis's departure was

---

place — one between the victim and Lawson and one between the victim and the defendant. The evidence will not support such an inference.

The Commonwealth also suggests (as it did at the trial) that Lewis had poor eyesight and was not wearing his glasses at the time of the murder, and that the defendant had acted in effect as a "seeing eye" for Lewis in pointing out the victim. The evidence that Lewis had poor eyesight was provided by Lewis's optometrist. This witness, however, was called out-of-order during the Commonwealth's case-in-chief by Lewis's trial counsel in order to accommodate the optometrist's practice. The evidence about Lewis's eyesight, therefore, cannot be relied upon by the Commonwealth as part of its case and, in its absence, the "seeing eye" theory evaporates.

uncertain even as to the gender of the driver of the automobile. This evidence may not rise above the level of suspicion.

We need not decide, however, whether there is enough evidence to warrant a conclusion beyond a reasonable doubt that Lewis left in the defendant's car because there is a more fundamental problem with the Commonwealth's case. There is nothing to show that the defendant knew before the murder that Lewis was armed, and that he shared Lewis's goal of murdering the victim with deliberately premeditated malice aforethought. On this point, the Commonwealth directs attention to *Commonwealth* v. *Stewart*, 411 Mass. 345 (1991), as the governing decision. In *Stewart*, a close case from a rule 25 (a) standpoint, we concluded that there was enough evidence presented by the Commonwealth to warrant the defendant's conviction of murder in the second degree on a theory of joint venture as the person who drove the murderer to and from the scene of the homicide. Specifically, we concluded that the knowledge and intent necessary for the defendant's conviction in *Stewart* of murder on a joint venture theory was furnished by evidence that the defendant had been with the murderer when he used his handgun shortly before the homicide to shoot a cat, and, therefore, knew the murderer was armed. As a result, the defendant could be permissibly found to have shared with the murderer an intent to find and to shoot the victim. *Id.* There was also evidence in *Stewart* which positively identified the defendant's automobile as the one the shooter ran to and entered immediately after the murder, and evidence clearly identifying the registration number on the license plate of the defendant's car. *Id.* at 348.

In this case, as has been discussed above, there is little evidence that Lewis fled from the barbershop in the defendant's automobile, and there is insufficient evidence to warrant an inference beyond a reasonable doubt that the defendant was actually aware before the murder that Lewis was armed and bent on murder, and, consequently, that he consciously joined with Lewis to complete that plan. Thus, on the critical elements of knowledge and the shared intent necessary to

support a conviction on a joint venture theory of murder in the first degree, the Commonwealth's proof was deficient.[5] See and compare *Commonwealth* v. *Walsh*, 407 Mass. 740, 745 (1990) (defendant and coventurer attacked different individuals; evidence insufficient to convict defendant of battery on coventurer's victim in the absence of any evidence that defendant knew coventurer was armed), with *Commonwealth* v. *Longo*, 402 Mass. 482, 488 (1988) (evidence sufficient to convict defendant of murder where coventurer, who stabbed victim to death, displayed knife in defendant's presence).

In the last analysis, the Commonwealth's evidence in this case was sufficient to: (a) place the defendant with his cousin, Lewis, about one hour before the murder; (b) indicate that the defendant had been in the barbershop (where he was a regular customer) at various times during the day of the crime; and (c) suggest that a small, dark colored foreign automobile, either a Toyota or Maxima, was driven by an unidentified black man to transport Lewis away from the crime. Apart from the problems created by this vague picture, we are left with the conclusion that, even if the jury could have warrantably found that the defendant drove the get-away car, they could only have speculated on whether the defendant knew that Lewis was armed and planned to murder the victim and whether the defendant shared with Lewis the necessary intent to commit a premeditated murder.[6]

---

[5]There was some evidence of consciousness of guilt to the effect that the defendant lied to Sergeant Horsley in saying that he had been at Boch Motors alone. We do not think this evidence, which did not reflect consciousness of guilt for having committed the crime charged, is sufficient to overcome the defects in the Commonwealth's case outlined above. See *Commonwealth* v. *Mandile*, 403 Mass. 93, 102 (1988); *Commonwealth* v. *Stewart*, 398 Mass. 535, 549 (1986).

[6]Although it is not necessary to the conclusion we reach, it is worth mentioning that the jury may have been persuaded to convict the defendant by a number of improper remarks made by the prosecutor in his closing argument.

For example, the prosecutor made an emotional appeal to the jury, suggesting that, as the "conscience of the community," they had a duty to convict. The prosecutor twice improperly stated the law, telling the jury

The judgment is reversed, the verdict is set aside, and judgment is to enter for the defendant.

*So ordered.*

---

that the evidence against the defendant and Lewis was "interchangeable." This was a serious misstep because, as the summary of the evidence indicates, there was substantial eyewitness testimony identifying Lewis in a deliberately premeditated murder and scant evidence connecting the defendant to Lewis. Further, other remarks of the prosecutor were "reasonably susceptible of being interpreted as a comment on [the defendant's] failure to take the stand," *Commonwealth* v. *Domanski*, 332 Mass. 66, 69 (1954), such as his comment that the defendant and Lewis were the only people (aside from the victim) that knew why the crime had been committed, but "we can't present him and I can't get inside of his brain nor his brain [the defendants]." The prosecutor also arguably misstated the evidence, and asked the jury to engage in improper speculation, when he argued that the defendant had "tussle[d]" with the victim, despite the fact, as has been pointed out above, that there was no testimony that the defendant and the victim had grappled at all.