COMMONWEALTH vs. KURT L. HUENEFELD.

No. 92-P-395.

Middlesex. December 10, 1992. - April 5, 1993.

Present: DREBEN. SMITH, & GREENBERG, JJ.

*Practice, Criminal,* Assistance of counsel, Disqualification of judge, Conduct of prosecutor, New trial.

A criminal defendant was not entitled to a new trial by reason of his having been denied the effective assistance of counsel, where the alleged deficiencies in the performance of his trial counsel, considered individually or in the aggregate, were not shown to have been prejudicial to him. [318-321]

A criminal defendant's counsel on direct appeal was not shown to have been ineffective. [321-322]

The judge who presided at the trial of a criminal case was not required to disqualify himself from deciding the defendant's new trial motion that challenged the accuracy of the judge's evidentiary rulings. [322]

A criminal defendant made no showing of improper conduct by the prosecutor at his trial. [322-323]

A judge appropriately denied a criminal defendant's motion for a new trial without holding an evidentiary hearing. [323]

INDICTMENTS found and returned in the Superior Court Department on December 30, 1982.

A motion for a new trial, filed on July 25, 1991, was considered by *John L. Murphy, Jr.,* J.

*Kurt L. Huenefeld,* pro se.

*Pamela A. Scarlatelli,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. At the defendant's jury trial on two indictments charging him with first degree murder and burglary with armed assault in a dwelling house, the Commonwealth's case was overwhelmingly strong. On September 24, 1983, a Superior Court jury found him guilty of second degree murder and of burglary and armed assault in a dwelling house.

His convictions were affirmed on appeal by an order under rule 1:28 of this court. See *Commonwealth* v. *Huenefeld*, 19 Mass. App. Ct. 1109 (1985). The Supreme Judicial Court denied further appellate review, 394 Mass. 1104 (1985).

A subsequent motion for a new trial (see Mass.R.Crim.P. 30[b], 378 Mass. 900 [1979]) was denied by the trial judge on February 3, 1992, without a hearing.[1] From that denial, the defendant has appealed.

We set forth the evidence and background of the case in some detail, beginning with facts about which there is no dispute. We then proceed to address them in relation to specific claims of error. Just before 9:00 P.M., on October 25, 1982, the defendant and his childhood friend, John Nazzaro, left the defendant's parents' house in Bedford, intending to spend the evening drinking at the Jolly Porpoise Lounge, a pub located inside the Lord Bedford Motel. The defendant suggested they stop at the residence of Robert Crowe (the victim) at 6 School Way in Bedford to procure some cocaine before continuing to the lounge. They went to the victim's bedroom. Nazzaro witnessed the defendant inject some "freebase" cocaine into his arm while the victim looked on.

Nazzaro and the defendant proceeded along to the lounge as planned and drank until ten minutes after last call, around midnight. Nazzaro stayed with the defendant the entire time, except for a brief interval when the defendant returned to his car to inject the rest of the cocaine which he had obtained from the victim.

According to Nazzaro, on the way home, the defendant proposed that they stop at the victim's house again. Once there, Nazzaro remained in the defendant's car for about fif-

---

[1] On July 25, 1991, the defendant, proceeding pro se, filed a motion for a new trial containing twenty-one separate grounds for relief supported by a six-page affidavit. Later, on October 15, 1991, the defendant requested amendments to his original motion amplifying his claim of ineffective assistance of counsel. On February 3, 1992, the judge denied the motion and noted that nearly all of the defendant's claims could have been raised in the direct appeal. He elected not to consider the defendant's ineffective assistance of counsel claim because of "lack of information concerning the original appeal," inviting this court to pass on the matter.

teen minutes while the defendant went inside. When the defendant emerged, he told him that he had done "a little bit more cocaine." Both men returned to the defendant's parents' house and repaired to a basement room which Nazzaro and the defendant shared as sleeping quarters. Nazzaro then fell asleep.

Awakened by the defendant at about 2:30 A.M., Nazzaro was confronted with the defendant's frantic confession. The defendant told him that after Nazzaro had fallen asleep, he had returned to the victim's room to steal more cocaine out of his safe, only to have the victim awaken in the midst of the burglary. The defendant then explained that he turned a light on very quickly, grabbed the victim and stabbed him four or five times with a screwdriver. Then he leapt from the bedroom window and returned home. At the defendant's behest, they concocted an alibi to account for their whereabouts at the time of the murder.

Later that day, October 26, the victim's body was found by his father, lying in a pool of blood next to his bed. Janet Crowe, the victim's sister, who lived in the house, told the police that she and another sister saw the defendant come inside their home at about 12:30 A.M., while Nazzaro waited outside in the defendant's car. Her brother seemed upset that she had allowed the defendant inside. She also told the police that she was awakened some time before 2:30 A.M. and heard her brother exclaim, "What the hell are you doing?" Alarmed by what she heard, she walked down the hall towards her brother's room. Just as she reached his door, it was shut, locked and a light went out. Shortly afterwards, she heard what she thought was the sound of the victim's dog whimpering.

That same day the police interviewed Nazzaro and the defendant. Both stuck to a story and claimed to have been out drinking the entire evening. But on the following day, October 27, the police called in Nazzaro — this time alone — for another discussion of his account of the matter. Later that evening, Nazzaro, accompanied by an attorney and his father, struck an agreement with the police to the effect that

he would not be charged with any crimes related to his previous false statements if he told them what he knew and if he was not involved in the murder.

Largely on the information Nazzaro supplied, the police obtained an arrest warrant for the defendant and a search warrant for certain areas of his parents' home. As a result of the search of the basement, bathroom, and a trash barrel on the porch, the police seized many items belonging to the defendant, three of which (a pair of grey corduroy pants, a hypodermic needle, and a blood-stained mattress) figured as evidence at his trial.

The Commonwealth's expert pathologist, Dr. George Katsas, described twenty-three incised wounds on the victim's body, twenty of which pierced his head. He opined that the wounds were not necessarily fatal and would not have caused immediate death. He also offered that the victim's injuries were consistent with being attacked by a person wielding a screwdriver.

The defendant did not present any witnesses at his trial. Rather, his counsel skillfully cross-examined Nazzaro (and other prosecution witnesses) to suggest to the jury (as he did in his closing argument) that it was Nazzaro who killed the victim and now sought to shift the blame to the defendant.

Passing the question whether the defendant has waived each of his claims for appellate review, *Commonwealth* v. *Watson*, 409 Mass. 110, 112 (1991), we conclude that all of the contentions raised on his appeal of the judge's denial of his motion for a new trial are without merit, as each is controlled by settled legal principles or lacks support in the record. Accordingly, we discuss some of the more prominent claims which the defendant has outlined in his brief in a summary fashion, citing in each instance the authority on which our conclusion rests.

1. *Ineffective assistance of trial counsel.* The defendant makes three separate arguments that he was denied effective assistance of counsel.

First, he complains that, prior to trial, defense counsel did not request independent testing by an expert of certain items

seized by the police belonging to the defendant. Analysis of blood stains found on his mattress cover showed a common blood group (Type A) with that of the victim. It was admitted as evidence at trial. But during cross-examination of the Commonwealth's forensic witness, a chemist attached to the State police laboratory, defense counsel elicited testimony to the effect that, with more sophisticated equipment, a chemist could perform a more finite blood grouping analysis which might exclude the defendant altogether. Defense counsel pressed the trial judge for funds to hire an independent serologist to test the stains on the mattress cover. The judge permitted this to be accomplished. At the conclusion of the evidence, the defense presented (in the form of an agreed stipulation) an affidavit of Dr. John Abbott, which stated that the blood stains tested from the mattress cover sample could not possibly match the blood of the victim. From defense counsel's cross and recross-examination of the Commonwealth's forensic chemist, it is apparent that counsel was aware of the State laboratory's blood testing in general and the work of more sophisticated private serological laboratories in particular. That trial counsel chose not to risk possible inculpatory results until after the Commonwealth's evidence was presented to the jury appears to have been a reasonable tactical decision, especially where the defendant claimed that it was not he but Nazzaro who killed the victim. This was a particularly good tactic because the Commonwealth presented no evidence of Nazzaro's blood type during its case-in-chief. See *Commonwealth* v. *Rossi*, 19 Mass. App. Ct. 257, 259 n.2 (1985).

The defendant suggests that the trial judge's fleeting remark uttered in a moment of frustration that defense counsel "screwed up" (in failing to obtain an earlier independent blood test), supports his contention of ineffectiveness. That remark hardly stands as a general criticism of defense counsel's conduct of the trial. The judge properly concluded that the point was not of such probative significance as to require a new trial. Whatever might be said as to the delay in obtaining the independent analysis, the evidence placed before

the jury (the Abbott stipulation) more than neutralized the Commonwealth's suggestion to the jury that the blood samples matched.

Next, the defendant argues that defense counsel failed to object to the admission of certain "false evidence" which prejudiced his defense. He points to a certified copy of a report of the Department of Public Safety, which stated that fibers (not human head hair) taken from the victim's left hand were not the same as those fibers which were taken from the victim's mattress. Even if the jury may have inferred, as a consequence, that the victim had grabbed some item of his assailant's clothing, and clutched the remnants in his hand as he died, there was no evidence which connected the fibers to the clothing or mattress seized during the search of the defendant's home. No harm befell him because of the testimony.

The failure of counsel to object to certain other items retrieved from the defendant's home as a result of the police search on grounds of relevancy (the defendant claims "falsity") was not prejudicial. The officers properly seized a syringe from a trash barrel located just outside the house. See *United States* v. *Wilkinson*, 926 F.2d 22, 27 (1st Cir. 1991) (upholding search of trash barrel left on defendant's lawn next to public street). While its relevancy was questionable, at least some of the testimony about it was admissible over objection, because Nazzaro testified to observing the defendant inject himself with cocaine during the hours preceding the murder. See *Commonwealth* v. *Harris*, 376 Mass. 201, 207 (1978); *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269-270 (1982).

Counsel's failure to object to the prosecutor's comment in her closing speech to the jury when she said, "It's either that man sitting right there [the defendant] or it's John Nazzaro," is of no consequence. That remark did not amount to an improper comment on the defendant's exercise of his Fifth Amendment rights. Contrast *Commonwealth* v. *Smith*, 413 Mass. 275, 282 n.6 (1992).

Last, the defendant's claim that his trial counsel was unprepared is unavailing, for the simple reason that he has not made a "showing that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). There has not been any showing of how the defendant was prejudiced. See *Commonwealth* v. *Gregory*, 401 Mass. 437, 445 (1988). Conspicuously absent is a presentation of something specific or concrete that was "likely to have made a difference in the result," *Commonwealth* v. *Anderson*, 398 Mass. 838, 839 (1986), or a showing that any deficiency in pretrial preparation "resulted in forfeiture of a substantial defence." *Commonwealth* v. *Sellon*, 380 Mass. 220, 227 (1980), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 98 (1974).

In light of what we have already said, none of the defendant's asserted deficiencies in the performance of his trial counsel individually, or in the aggregate, were "likely to have made a difference in the result." *Commonwealth* v. *Anderson, supra.* See *Commonwealth* v. *Satterfield*, 373 Mass. at 115 & n.10. Nor do we think that any of the courses of action now suggested by the defendant "would have better protected [the] defendant and was reasonably foreseeable as such before trial." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

2. *Ineffective assistance of appellate counsel.* The defendant also claims that his appellate counsel shirked his responsibilities in presenting his direct appeal. The basis of his argument is that appellate counsel failed to raise any of the issues in his direct appeal which the defendant submitted in support of his motion for a new trial.

Appellate counsel prepared and argued a comprehensive brief in this court on behalf of the defendant. Four issues were adequately argued. Principally the attack was on the judge's failure to instruct the jury on the effect of voluntary intoxication in determining the requisite intent required for the crime charged. "The question of effectiveness of counsel is a practical, not a theoretical one." *Commonwealth* v. *Schlieff*, 5 Mass. App. Ct. 665, 668 (1977). None of the fo-

rensic points now stressed by the defendant as appealable is-. sues was a prominent feature at his trial.

3. *Failure of the trial judge to recuse himself.* The decision of a judge to withdraw from a case at any stage is within the judge's sound discretion. *Commonwealth* v. *Coyne*, 372 Mass. 599, 602-603 (1977). *Commonwealth* v. *Leventhal*, 364 Mass. 718 (1974). Normally recusal is required "only when it is shown that the judge has a bias or prejudice against a party based on an extrajudicial source." *Commonwealth* v. *O'Connor*, 7 Mass. App. Ct. 314, 320 (1979). "It is important as to the review of the judge's actions especially in regard to a motion for a new trial that the same judge who presided over the trial, also hears the motion." Smith, Criminal Practice and Procedure § 2080 (2d ed. 1983).

In the instant case the defendant questions rulings of the trial judge which resulted in evidentiary determinations adverse to him. A judge may not be disqualified from deciding a motion for new trial on these grounds. *Commonwealth* v. *Leventhal*, 364 Mass. at 722, citing *Kennedy* v. *Justice of the Dist. Ct. of Dukes County*, 356 Mass. 367, 379 (1969).

4. *Prosecutorial misconduct.* The defendant sets forth a litany of criticisms of the prosecutor's presentation of evidence. Most of these matters related to the handling of the forensic evidence, which, as we have previously noted, produced no harm to the defense. In any event, the defendant furnishes no analysis which might be helpful in the assessment of his complaints. See *Carter* v. *Empire Mut. Ins. Co.*, 6 Mass. App. Ct. 114, 122 n.8 (1978).

The defendant complains that the prosecutor improperly (in bad faith) introduced in evidence a pair of corduroy trousers on which there were traces of occult (not visible except upon microscopic examination) blood. He claims that the judge admitted this evidence on the condition that further evidence of a match between the victim's blood type and the trace found on the trousers would be shown. The judge permitted the trousers to remain in evidence in spite of the prosecution's failure to link them to the murder. At the close of

the Commonwealth's case, defense counsel's request that the evidence be struck was denied. However, there was no prejudicial effect because it was the defendant's expert, Dr. Abbott, who stipulated that the blood sample on the pants was insufficient to conduct a matching test with the victim's blood. Furthermore, none of the witnesses called at trial, including Nazzaro, was able to state with certainty that these trousers were worn by the defendant on the night in question. There was no showing of bad faith in the prosecutor's offering the pants, and, even if the judge's ruling was erroneous, no harm was shown as a consequence.

For the first time, the defendant argues that the prosecutor's closing speech "vouched for the credibility" of the Commonwealth's witnesses. We find no basis in the record for this assertion, and the defendant's quotation of this cryptic term of art does not amount to adequate appellate argument. *A. Leo Nash Steel Corp.* v. *Southern New England Steel Erection Co.*, 9 Mass. App. Ct. 377, 385-386 (1980).

5. *Absence of an evidentiary hearing.* A judge has considerable discretion as to the method by which a motion for new trial is to be decided. If no substantial issues are raised by the affidavits, the judge may rule on the issues presented by the motion on the basis of the facts alleged in the affidavits without further hearing. *Commonwealth* v. *Saarela*, 15 Mass. App. Ct. 403, 406-407 (1983). Here the judge could find that the affidavit and other submissions of the defendant were "obscure" and "impressionistic and conclusory." *Commonwealth* v. *Stewart*, 383 Mass. 253, 259-260 (1981). He was right to deny the motion. The order of February 3, 1992, denying the defendant's motion for a new trial is affirmed.

*So ordered.*