COMMONWEALTH vs. REGINA A. DAUGHTRY.

Suffolk. January 4, 1994. - February 17, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Joint Enterprise. Evidence,* Joint enterprise, State of mind,
Grand jury proceedings. *Practice, Criminal,* Indictment, Disclosure of
evidence, Examination of jurors, Deliberation of jury, New trial. *Jury
and Jurors.*

At a murder trial, there was sufficient evidence of joint venture to warrant
the jury in convicting the defendant on that basis, and the judge did not
err in denying the defendant's motion for a required finding of not
guilty and in instructing the jury on the issue of joint venture. [137-
141]

An indictment for murder in the first degree that followed the form pro-
vided in G. L. c. 277, § 79, was constitutionally sufficient to charge the
defendant as a principal or as an accomplice [141-142]; and the grand
jury minutes, which had been furnished to the defendant, together with
the responses to the defendant's motion for particulars, provided rea-
sonable notice of the nature of the offense and the theory on which the
Commonwealth intended to proceed. [142-143]

The record of a murder trial did not support the defendant's claims of
denial of due process of law either because of the Commonwealth's fail-
ure to disclose evidence of promises, rewards, or inducements it alleg-
edly extended to a witness in exchange for his testimony, where there
was no indication that such evidence ever existed, or because of the
Commonwealth's alleged withholding of exculpatory evidence. [143-
145]

A criminal defendant was not deprived of an impartial jury by the judge's
discharge of a deliberating juror for medical reasons unrelated to the
case [145-146] or by the judge's replacement of two deliberating jurors
with alternates following an incident in the courthouse elevator, in cir-
cumstances where the judge questioned all the jurors individually and
found those remaining to be impartial and indifferent [146-147].

The judge at a murder trial did not err in denying the defendant's motion
for a new trial. [147]

INDICTMENTS found and returned in the Superior Court Department on September 9, 1991.

The cases were tried before *James D. McDaniel, Jr.*, J., and a motion for a new trial was considered by him.

*John J. Bonistalli* (*Patricia A. Wilson* with him) for the defendant.

*Marina Medvedev*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Regina A. Daughtry, appeals from her convictions of murder in the first degree and unlawful possession of a firearm and the denial of her motion for a new trial. Her claims of error concern the presentation of the issue of joint venture to the jury, the Commonwealth's alleged failure to provide her with exculpatory evidence prior to trial, and the discharge of jurors during deliberations. She also seeks relief under G. L. c. 278, § 33E (1992 ed.). We affirm.

In the early morning hours of June 30, 1991, Angela Clayton died soon after being shot in the head. Just prior to being shot, Clayton was standing with several acquaintances on Elm Hill Avenue in the Dorchester section of Boston. At trial, the Commonwealth's primary theory of the case was that the defendant, while accompanied by Christopher Jenkins, had shot into the crowd of people from a nearby street corner intending to kill Ernest Polite whom she believed to be in the crowd, killing Clayton instead. The Commonwealth introduced ample evidence, including the testimony of Jenkins, that the defendant had fired the gun. The jury found the defendant guilty of murder in the first degree and unlawful possession of a firearm. The defendant filed a motion for a new trial, which was denied. These consolidated appeals followed.

1. *Evidence of joint venture.* In instructing the jury on the applicable law, the trial judge included an instruction on joint venture. The defendant contends that her murder conviction should be reversed because the judge erred in giving the jury instructions on this issue, arguing that the evidence at trial was insufficient to warrant the jury's finding beyond a

reasonable doubt that she had participated in the crime as a joint venturer. She claims that her motion for a required finding of not guilty should have been granted to that extent. Specifically, she argues that there was insufficient evidence that she and Jenkins planned the crime, that she knew that Jenkins possessed a gun, or that she otherwise shared Jenkins' intent to commit the crime.

In reviewing a denial of a motion for a required finding of not guilty, we must decide "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Smith*, 413 Mass. 275, 278 (1992), quoting *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933). A joint venturer is "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime." *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). One is a joint venturer even if not participating in the actual perpetration of the crime if, by agreement, he is positioned to render aid, "[f]or the presence of the abettor under such circumstances, must encourage and embolden the perpetrator to do the deed, by giving him hopes of immediate assistance." *Id.* at 472, quoting *Commonwealth* v. *Knapp*, 9 Pick. 495, 518 (1830). "The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Soares, supra* at 470. The requisite mental state in this case is deliberately premeditated malice aforethought. See *Smith, supra* at 279. Thus, the evidence viewed in the light most favorable to the Commonwealth must be sufficient to warrant a jury's finding beyond a reasonable doubt that the "defendant was (1) present at the scene of the crime, (2) with knowledge that [Jenkins] intend[ed] to commit the crime or with intent to commit a crime, and (3) by agreement [was] willing and

available to help [Jenkins] if necessary." *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence of joint venture to warrant the jury in convicting the defendant on that basis. The evidence at trial taken in the light most favorable to the Commonwealth was as follows. Several weeks before the killing, the defendant was threatened with a knife by Ernest Polite. Several days before the killing, the defendant had stated that "she [was] going to get [Polite]." The defendant and Jenkins were longtime friends. On the night of June 29, 1991, the defendant and Jenkins were together at a party on Humboldt Avenue in Dorchester. At the party, the defendant had a nine millimeter semi-automatic revolver tucked at her waist under her shirt. Jenkins knew that the defendant was carrying the gun. The day before, Jenkins had observed another man give this gun to the defendant. The defendant and Jenkins danced together and talked. A short time later, the defendant walked outside the party and was informed by friends that Polite was with a group of people on Elm Hill Avenue. The defendant went back into the party and asked Jenkins to "go up Elm Hill." Jenkins responded by asking the defendant whether she had the gun. The defendant indicated that she did. The defendant and Jenkins then left the party and walked to the corner of Elm Hill Avenue and Hutchings Street. A group of people was standing on Elm Hill Avenue. One shot was fired from the corner with a nine millimeter revolver. The shot killed Clayton, who was in the group. After the shooting, Jenkins ran from the scene holding the gun. The defendant and Jenkins ran to a friend's house where Jenkins hid the gun under a bed. Both spent the night at the house.

The jury could have reasonably inferred from this evidence that the defendant and Jenkins had agreed at the party to shoot Polite, that the defendant handed the gun to Jenkins on their way to Elm Hill Avenue with the intent that Jenkins shoot Polite, that Jenkins fired the gun intending to shoot Po-

lite, and that the defendant accompanied Jenkins to assist him and shared his intent.[1] There was sufficient evidence that Jenkins was the shooter. In addition to ample testimony that either the defendant or Jenkins fired the fatal shot, see *Commonwealth v. Cohen*, 412 Mass. 375, 380-381 (1992), there was testimony that the defendant ran from the scene holding the gun. The defendant's contention that there was insufficient evidence on a shared mental state is also unpersuasive. The defendant presented evidence at trial that Jenkins fired the gun intending to shoot another person in the group who he believed had recently shot his cousin. The defendant argues that, if the jury determined that Jenkins was the shooter, they could not have reasonably found that the defendant shared his intent. This argument fails to acknowledge that the jury could also have reasonably inferred from the evidence that the defendant wanted to seek revenge against Polite for threatening her and that she had enlisted the help of her longtime friend, Jenkins, to shoot him. "The line that separates mere knowledge of unlawful conduct and participation in it, is 'often vague and uncertain. It is in the province of the jury to determine from the evidence whether a particular defendant [has] crossed that line.'" *Commonwealth v. Longo*, 402 Mass. 482, 487 (1988), quoting *Commonwealth v. Cerveny*, 387 Mass. 280, 287 (1982). The jury's inferences "need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth v. Casale*, 381 Mass. 167, 173 (1980). Accordingly, we hold that the judge did not err in denying the defendant's motion

---

[1]Some of these findings would be solely based on Jenkins' testimony. Even though the jury would have been required to disbelieve Jenkins' testimony that he did not fire the gun to have found the defendant guilty as an accomplice, the jury could have reasonably believed much of his other testimony. A jury are free to believe part of a witness's testimony and disbelieve part, if doing so does not distort any integral portion of the testimony. *Commonwealth v. Perez*, 390 Mass. 308, 314 (1983). *Commonwealth v. McInerney*, 373 Mass. 136, 144 (1977). The jury could have reasonably concluded that Jenkins lied to protect himself in testifying that he did not fire the gun and then reasonably believed his other testimony concerning the events leading up to the time of the shooting.

for a required finding of not guilty and in instructing the jury on the issue of joint venture.[2]

2. *The indictment charging murder in the first degree.* The defendant also contends that the presentation to the jury of the issue of joint venture deprived her of her right to be tried on only the charges returned by the grand jury. She argues that, since there was no evidence presented to the grand jury that she participated in the killing as an accomplice, the basis for the grand jury's indictment against her for murder in the first degree was as a principal only. She further contends that she was not adequately notified of this theory prior to trial to defend herself properly. We disagree.

The defendant never made this objection before or during trial. Accordingly, we review this contention pursuant to G. L. c. 278, § 33E. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 157, cert. denied, 457 U.S. 1137 (1982). Regardless of the standard of review, the defendant's contention fails. The defendant's indictment for murder in the first degree tracks the language of the indictment form provided in G. L. c. 277, § 79 (1992 ed.).[3] We have made clear that this

---

[2]The defendant also contends that the judge committed reversible error by allowing the Commonwealth to misstate the law during its closing argument and then failing to cure the misstatement in his instructions to the jury. We disagree. During the Commonwealth's closing, the prosecutor stated that, "if the intent of one, either, or both is to cause serious bodily injury likely to result in death, then it's joint venture." The defendant correctly notes that to be a joint venturer one must share with the principal the mental state required for the crime. A review of the prosecutor's entire closing, however, indicates that the prosecutor properly informed the jury that they had to find that the defendant shared the same intent as Jenkins to find her guilty as a joint venturer. More importantly, the judge's instructions more than adequately informed the jury of the proper standards of joint venture and cured any misstatement. For this reason, there is no merit in the defendant's contention that the judge's instructions on joint venture improperly suggested that they could find the defendant guilty under a theory of joint venture if they believed that the defendant intended Polite to be shot and Jenkins intended to shoot the person who he believed had attacked his cousin. We discern no such suggestion.

[3]The defendant's murder indictment reads in pertinent part as follows: "The Jurors for the Commonwealth of Massachusetts on their oath present that Regina A. Daughtry, on June 30, 1991, did assault and beat one Angela Clayton, with intent to murder her, and by such assault and beating

form is "constitutionally sufficient to charge murder by whatever means it may have been committed." *Commonwealth* v. *Robertson*, 408 Mass. 747, 749 (1990). Thus, the defendant's claim that the indictment charges her with murder in the first degree only as a principal fails. Additionally, the defendant's contention that she was not afforded reasonable notice of the nature and grounds of the offense charged is unpersuasive. A review of the record is convincing that the defendant had notice that the Commonwealth would attempt to prove, in the alternative, that she was guilty as an accessory. First, the Commonwealth presented evidence to the grand jury that the defendant acted as an accomplice in the murder and provided the defendant with the grand jury minutes prior to trial.[4] Second, the Commonwealth, in response to the defendant's motion for particulars, notified the defendant prior to trial that the manner and means of the crimes charged were "by any and all manner and means by which these crimes could be committed." The defendant did not apply for another bill requesting greater particularity. Last, defense counsel at trial anticipated the Commonwealth's joint venture argument in his closing.[5] During the defendant's

---

did kill and murder the said Angela Clayton." General Laws c. 277, § 79 (1992 ed.), provides that "the forms hereto annexed, shall apply . . . to indictments, and such forms shall be sufficient in cases to which they are applicable." The form annexed to § 79 which applies to murder in violation of G. L. c. 265, § 1 (1992 ed.), provides in relevant part as follows: "That A.B. did assault and beat C.D., with intent to murder him . . . and such assault and beating did (kill and) murder C.D. . . ."

[4]The evidence presented to the grand jury was substantially the same as the evidence admitted at trial, although we have never required such similarity and do not now require it. For the same reasons that we concluded that the evidence at trial was sufficient to warrant the submission of the joint venture issue to the jury, we conclude that the evidence presented to the grand jury provided the defendant with adequate notice that the Commonwealth would proceed with a joint venture theory.

[5]It is also unclear whether the defendant ever objected to presenting the issue of joint venture to the jury on the ground of insufficiency of evidence. After closing arguments, defense counsel, before submitting his requested jury instructions on joint venture, indicated that he had previously objected to presenting the issue to the jury. A review of the record, however, does not reveal any such objection. In the previous section, we treated this issue

closing argument, prior to the Commonwealth's closing, defense counsel argued to the jury that the evidence did not warrant a finding that the defendant was guilty as an accomplice. The defendant's rights were clearly not infringed. There was no error.

3. *Disclosure of exculpatory evidence.* The defendant contends that the Commonwealth failed to provide her with certain exculpatory evidence as required by Mass. R. Crim. P. 14 (a) (1) (C), 378 Mass. 874 (1979). The failure of the Commonwealth to provide exculpatory evidence to a defendant may be a denial of due process and may require a new trial. See *United States* v. *Agurs*, 427 U.S. 97, 107-108 (1976); *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963); *Commonwealth* v. *Cinelli*, 389 Mass. 197, 214-215, cert. denied, 464 U.S. 860 (1983). Rule 14 (a) (1) (C) implements this constitutional requirement. Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Criminal Procedure at 303 (Law. Co-op. 1979). The Commonwealth, however, is only required to provide exculpatory evidence in its possession. See *Commonwealth* v. *Daye*, 411 Mass. 719, 734 (1992), and cases cited. Because we conclude that the Commonwealth never possessed any of the evidence which the defendant asserts was suppressed, we hold that the Commonwealth did not violate rule 14 (a) (1) (C) and, accordingly, that the judge did not err in admitting the challenged evidence.

The defendant's first assertion is that she was denied due process of law because the Commonwealth failed to disclose to her the promises, rewards, or inducements it extended to Jenkins in exchange for his testimony. She argues that the evidence at trial and the Commonwealth's theory of the case demonstrate that the Commonwealth must have given Jenkins rewards or inducements to testify. In support, she points to the facts that the Commonwealth failed to charge Jenkins with any crimes arising from this incident and that it had

as having been properly raised at trial by the defendant's general motion for a required finding of not guilty. See *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988).

criminal charges dismissed against Jenkins in two unrelated criminal actions shortly after he testified before the grand jury.

A review of the record, however, indicates that no promise, inducement, or reward was ever given to Jenkins. Prior to trial, in response to several requests by the defendant, the Commonwealth consistently denied giving Jenkins any kind of inducement to testify. At trial, defense counsel extensively cross-examined Jenkins on whether there was any promise or inducement. Jenkins repeatedly denied that any were given or that he received any special treatment. Also, the Commonwealth called the two assistant district attorneys who were involved in Jenkins' unrelated criminal cases to testify. They both testified that they had not known that Jenkins was a witness in this case when they requested dismissals in their respective cases and had requested dismissals for reasons entirely unrelated to this case. Defense counsel extensively cross-examined each of these two witnesses and failed to elicit any evidence of any promise or inducement. The defendant cannot claim error in the Commonwealth's failure to disclose something which by all indications never existed. Also, there being no agreement, the judge was certainly not obligated specifically to instruct the jury, as the defendant requested.

The defendant also alleges that the Commonwealth engaged in a pattern of suppression and late disclosure of exculpatory evidence and that this pattern prevented her from adequately preparing her defense. She argues that certain testimony of various witnesses should have been excluded because the Commonwealth failed to notify her of these statements prior to trial. The defendant's arguments are groundless and do not warrant extensive discussion. There is no evidence that the Commonwealth failed to provide the defendant with any exculpatory evidence which it had in its possession. Some of the challenged testimony substantially mirrors the witnesses' testimony to the grand jury and the defendant, having been provided with the complete grand jury minutes well before trial, cannot rightfully complain

that she was surprised by this testimony at trial. Additionally, although she contends otherwise, the defendant had notice of the possibility that all these witnesses would testify, since the Commonwealth furnished her with their names well before trial. On the several instances at trial where the witnesses' testimony differed from the statements provided by the Commonwealth, the judge afforded defense counsel an opportunity "to talk to the witness." More importantly, there is no indication that the Commonwealth knew the content of the witnesses' new testimony prior to trial. Furthermore, the new testimony was of questionable materiality. Interestingly, the defendant called several of these witnesses to the stand and elicited the testimony which she now challenges. A defendant may not call witnesses, examine them, and then challenge their testimony. The Commonwealth provided the defense with all witness statements in its possession soon after obtaining them. There is nothing in the record that indicates that it suppressed any exculpatory evidence. There was no error.

4. *Discharge of deliberating jurors.* The defendant claims that she was deprived of her right to an impartial jury. She claims first that she was prejudiced by the discharge of a deliberating juror for medical reasons. The defendant argues that the judge should have inquired into how the juror's health was impaired and whether the juror's impairment was a result of the deliberations. General Laws c. 234, § 26B (1992 ed.), provides in pertinent part: "If, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged . . . ." "The discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error. It is done only in special circumstances, and with special precautions." *Commonwealth* v. *Connor*, 392 Mass. 838, 843 (1984). As we instructed in *Commonwealth* v. *Haywood*, 377 Mass. 755, 769 (1979), "before a juror is excused from deliberations and replaced by an alternate juror, the judge

should hold a hearing and be fully satisfied that there is a meritorious reason why a particular juror should not continue to serve." We are satisfied that the judge followed the proper procedures in discharging the juror. Although the defendant characterizes the juror's reason as a "medical appointment," the judge concluded that the juror's hospital appointment pertained to an extensive medical procedure necessitated by the juror's very serious condition. Furthermore, the juror reminded the judge that she had informed him during the jury selection process that she would be required to undergo the treatment on the scheduled date; at that time neither counsel challenged her inclusion on the jury. See *Commonwealth* v. *Olszewski*, 416 Mass. 707, 720-722 (1993). Although the judge did not specifically inquire into the nature of the juror's health problems, he determined, after questioning the juror, that the juror had a grave condition and needed the particular test. Also, it is clear that the juror's impairment was not due to the deliberations but to a prior condition. The judge did not abuse his discretion in discharging the juror. The reason for the discharge was personal to the juror and had nothing to do with the issues of the case or with the juror's relationship to the other jurors. See *Connor, supra* at 844-845.

The defendant also claims that she was deprived of an impartial jury by the circumstances of the jury's deliberations. After the third day of deliberations, some of the jurors were confronted in a courthouse elevator by three young males who the jurors could have concluded were friends of the defendant. The next day, the judge called each juror individually and questioned each one on his or her knowledge of the incident and the extent of the incident's influence on each juror's ability to deliberate fairly and impartially. The record reveals that the judge devoted considerable time and concern to each juror. Although many of the jurors indicated that they were bothered by this incident, everyone except two stated that he or she remained fair and impartial and could decide the case solely on the evidence and the law. The judge discharged the two jurors who stated that they were no

longer impartial and replaced them with alternate jurors. The defendant claims that the incident was so inherently prejudicial to the defendant that the judge should have declared a mistrial. We disagree. The judge properly conducted individual questioning of each juror, outside the presence of the other jurors, to determine the extent of the juror's exposure to the incident, and its effect on the juror's ability to render an impartial verdict. See *Haywood, supra* at 769-770; *Commonwealth* v. *Jackson*, 376 Mass. 790, 800-801 (1978). "The constitutional standard of fairness requires only that the jurors be impartial and indifferent." *Jackson, supra* at 799. The judge concluded that the remaining jurors were impartial and indifferent. He was in the best position to evaluate the jurors' credibility. There was no abuse of discretion.

5. *Denial of motion for a new trial.* After she was convicted, the defendant filed a motion for a new trial based on the dismissal of the deliberating jurors and the Commonwealth's failure to provide exculpatory evidence prior to trial. This motion was denied without a hearing by the same judge who conducted the trial. The judge concluded that no evidentiary hearing was necessary, that the defendant was not deprived of her legal rights, and that there was no indication that justice had not been done. The judge based his conclusions on the defendant's arguments set forth in her memorandum accompanying the motion and his knowledge of the case. Although acknowledging that the granting of a new trial usually rests within the sound discretion of the judge, the defendant claims that the judge erred in denying the motion because the trial was infected with prejudicial error. As we have stated above, the judge did not err in discharging the three deliberating jurors or in retaining the other jurors. Also, the prosecutor did not fail to disclose any material exculpatory evidence. The judge's denial of the motion for a new trial was not erroneous.

6. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record, as is our duty in capital cases. We find no reason to grant any relief under G. L. c. 278, § 33E.

*Judgments affirmed.*

*Denial of motion for new trial affirmed.*