COMMONWEALTH *vs.* GERARD WALSH.

Middlesex. April 3, 1990. - June 21, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Joint Enterprise. Homicide. Assault and Battery by Means of a Danger-*
*ous Weapon. Practice, Criminal,* Required finding.

Evidence presented to the jury at the trial of indictments charging murder
  and assault and battery by means of a dangerous weapon was insuffi-
  cient to warrant their finding beyond a reasonable doubt that the de-
  fendant was a joint venturer and an active participant in an attack with
  a knife on a certain victim that caused or that resulted in the victim's
  death. [741-745]
On appeal by a defendant from his convictions of mayhem, assault and
  battery by means of a dangerous weapon, and assault and battery, all
  with respect to the same victim, this court declined to remand those
  cases for a new trial, where the defendant's brief contained no argu-
  ment bearing on those convictions which conformed to Mass. R. A. P.
  16 (a) (4). [745]

INDICTMENTS found and returned in the Superior Court
Department on September 4, 1986.

The cases were tried before *Richard S. Kelley*, J.

*Dana A. Curhan* for the defendant.

*David R. Marks*, Assistant District Attorney, for the
Commonwealth.

O'CONNOR, J. The defendant appeals from jury convic-
tions of the murder in the first degree of Robert Sweeney
and assault and battery by means of a dangerous weapon on
Sweeney, both on a joint venture theory, and from jury con-
victions of mayhem, assault and battery by means of a dan-
gerous weapon, and assault and battery on Evan Doherty.
The defendant raises numerous issues on appeal, the chief of
which is the sufficiency of the evidence to warrant the jury's
findings that the defendant was a joint venturer with John

Alkins in Alkins's attack with a knife on Sweeney thereby causing Sweeney's death. That issue was raised at trial by the defendant's motion for a required finding of not guilty filed at the conclusion of the Commonwealth's case. We conclude that the evidence was insufficient. Therefore, we reverse the defendant's convictions of murder and assault and battery by means of a dangerous weapon on Sweeney. For reasons we shall set forth, we affirm the convictions involving Doherty as a victim.

In reviewing the denial of a motion for a required finding of not guilty, we consider whether the evidence, viewed in the light most favorable to the Commonwealth, would warrant a reasonable juror in concluding that all the essential elements of the crime charged have been proved beyond a reasonable doubt. *Commonwealth* v. *Mahoney*, 405 Mass. 326 (1989). *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). The evidence most favorable to the Commonwealth bearing on the charge that the defendant was a joint venturer with Alkins in Alkins's attack on Sweeney was as follows: Alkins killed Sweeney at an outdoor area in Malden called the "Willows." The Willows was a relatively secluded place formed by the branches of two willow trees. People often went there to drink alcoholic beverages. While underneath the branches, they could not be seen from the outside.

On June 24, 1986, the defendant and others were at the Willows from about 10 A.M. until the late evening. Most of those present drank alcoholic beverages throughout the day. Alkins, who had been a codefendant before he pleaded guilty during the trial to manslaughter and assault and battery by means of a dangerous weapon on Sweeney, was also there from about 10 A.M. on. Sweeney arrived at the Willows in a police cruiser in the early evening. He did not bring any alcoholic beverages with him, but he drank while he was there and eventually passed out. Later that night, another police cruiser drove up to the Willows. The officer asked to speak to the defendant, and the defendant went over and talked to the officer.

Evan Doherty, the alleged mayhem victim, arrived at the Willows shortly after Sweeney's arrival. Doherty brought a six-pack of beer and a partially filled bottle of whiskey. The defendant said in Doherty's presence that he wanted a drink, and he said to Doherty in a hostile tone, "We share around here. We just don't take it all." Doherty gave the whiskey to the defendant, who took a drink and returned the bottle to Doherty.

Later in the evening, the defendant told two people to leave because there was going to be trouble. Soon afterwards, the defendant, Alkins, and Warren Harding walked away from the group and had a private discussion for a few minutes. A few minutes later, the defendant stood behind Doherty and said, "Here's for rattin' to the cops . . ." and he hit Doherty over the head with a bottle, breaking the bottle. The defendant pulled Doherty to the ground, got on top of him, and slashed his face, neck, and wrists with the broken bottle. After Doherty threw the defendant off and got away, the defendant said, "You think you're tough? . . . We'll see how tough you are when I get something else." The defendant then began to look at the ground as though he were searching for something.

At about the time that the defendant attacked Doherty, Alkins, with Harding standing by, also attacked Sweeney, stabbing him at least three times while Sweeney was lying under the willow trees. Sweeney neither moved nor spoke when he was stabbed.

Shortly after Doherty freed himself from the defendant, Doherty knocked the defendant down and got on top of him. The defendant then yelled, "Get him off me. Get him off me," and Alkins came out from underneath a willow branch. Alkins was about twelve feet away and held something long and thin in his hand. Alkins said something.[1] Doherty ran

---

[1]Doherty testified that Alkins said, "Well, he's half dead." The judge ruled that the statement was admissible only against Alkins. The content of the statement was not admitted against the defendant, and the Commonwealth properly does not rely on it in support of its position as to the sufficiency of the evidence.

away and, when he looked back, he saw the defendant holding a knife. Doherty ran to the police station.

When the defendant found out that the police had been notified, he, Alkins, and a third person immediately left the Willows and went to a bar in Everett. They stayed there for approximately one hour, and then left together in a taxi. When the three persons got out of the taxi, the defendant said to the driver: "If anybody comes up to you and asks if you saw us, say no." Later, the defendant lied to the police about his activities at the Willows.

Sweeney died of multiple stab wounds. According to the medical examiner, the wounds could have been inflicted by the knife seized from Alkins when he was arrested. Fibers discovered on Alkins's knife were consistent with sample fibers taken from Sweeney's shirt and sweater.

The critical question is whether the evidence set forth above was sufficient to warrant findings that the defendant was present at the scene of the attack on Sweeney, that he knew of Alkins's criminal intentions, and that by agreement he was willing and available to help Alkins if necessary. *Commonwealth* v. *Mahoney, supra* at 327. *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). *Commonwealth* v. *Bianco*, 388 Mass. 358, 366 (1983). For joint venturer criminal liability, the defendant's knowledge requirement is satisfied by his or her knowledge that there is a substantial likelihood that the crime will be committed by the other person. *Commonwealth* v. *Champagne*, 399 Mass. 80, 87 (1987).

Clearly, there was evidence of the defendant's presence at the scene of Alkins's attack on Sweeney. However, the jury could only have speculated that the defendant either knew that Alkins intended to kill or seriously harm Sweeney or knew of a substantial likelihood of such an attack. Also, the jury could only have speculated that the defendant had agreed to render help to Alkins if necessary. The Commonwealth argues that the jury reasonably could have found that the defendant and Alkins knew each other from prior visits to the Willows, that, by warning others that they should leave because there would be trouble, the defendant was get-

ting rid of potential witnesses, and that the attacks on Sweeney and Doherty promptly after the defendant, Alkins, and Harding conferred privately were not coincidences but instead were the fulfilment of a plan that had just been discussed. This inference is supported, the Commonwealth argues, by the evidence of Harding's participation in the conference followed by his accompaniment of Alkins during the attack on Sweeney. Also, the Commonwealth points out that there was evidence that Sweeney had been brought to the Willows by the police, and that the defendant's statement to Doherty, "Here's for rattin' to the cops," suggests the defendant's hostility toward both victims based on his perception of their involvement with the police. "Another possible motive for the attack[s] on both victims," the Commonwealth argues, "is revealed in the defendant's statement to Doherty, said in a hostile tone, that 'We share around here. We just don't take it all,' in reference to liquor. There was evidence that Sweeney arrived at the 'Willows' sober and without liquor but began drinking when he got there and was highly intoxicated when he died. There was no evidence that Sweeney ever contributed to any 'liquor runs' although the defendant did give Harding money to buy liquor."

The Commonwealth argues that the defendant's conduct with Alkins following the attacks, including his admonition to the taxi driver to tell anyone who might inquire that he had not seen Alkins and the defendant, as well as the defendant's lies to the police, constitutes evidence of consciousness of guilt with respect to the attack on Sweeney. Finally, the Commonwealth contends that the defendant's attack on Doherty reasonably could have been seen by the jury as "part and parcel" of Sweeney's murder because "[t]he attack on Doherty removed a potential witness to the murder, it provided a diversion for Alkins's attack on Sweeney, and it graphically demonstrated to Alkins the defendant's willingness to offer him substantial aid in his attack on Sweeney."

We recognize the possibility, as might a jury, that the defendant and Alkins harbored common grievances against Sweeney and Doherty, that they discussed and carried out a

plan to seriously injure both of them with dangerous weapons and to be available to help one another, and that the defendant's subsequent conduct was motivated by a consciousness of guilt with respect to both attacks. We think, however, that no more than possibilities have been shown, and that, therefore, under the standard of review articulated in *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), the defendant's convictions involving Sweeney as a victim must be reversed.

For all that appears, the defendant's advice to persons to leave the Willows because of anticipated trouble and the defendant's post-event conduct were related exclusively to the defendant's attack on Doherty. Also, although the evidence showed that, before the attacks, the defendant had confronted Doherty both with respect to "rattin' to the cops" and sharing beverages, there was no evidence of such confrontations or hostility between the defendant and Sweeney. There is no evidence that, before the attacks, the defendant knew that Alkins had a knife or that Alkins harbored a grudge against Sweeney. The Commonwealth's contention that the jury could reasonably have concluded that the defendant's attack on Doherty was a diversionary move to enable Alkins to attack Sweeney is unpersuasive. Moreover, there is nothing to suggest any other way in which the defendant's involvement with Doherty assisted Alkins's attack on the passed-out Sweeney or displayed an agreement on the defendant's part to be available in case Alkins needed help.

In light of our conclusion that the evidence was insufficient to warrant the verdicts against the defendant on the indictments involving Sweeney as a victim, we need not address the defendant's remaining arguments. Although the defendant has also appealed from his convictions of mayhem, assault and battery by means of a dangerous weapon, and assault and battery, all with respect to Doherty as a victim, and has requested that we remand those indictments for a new trial, the defendant's brief contains no argument conforming to Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), bearing on those convictions.

As to the convictions of murder in the first degree and assault and battery by means of a dangerous weapon on Robert Sweeney, the judgments are reversed, and the verdicts are set aside. Judgment is to enter for the defendant. The other judgments are affirmed.

*So ordered.*