COMMONWEALTH *vs.* ANDREW W. KILBURN.

Suffolk. September 4, 1997. - October 27, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Required finding, Mistrial, Instructions to jury, Capital case. *Homicide. Joint Enterprise. Intent. Evidence,* Inference, Flight.

At the trial of an indictment for joint venture felony-murder, the judge correctly denied the defendant's motions for a required finding of not guilty and for a new trial, where the Commonwealth presented sufficient evidence to persuade a rational jury beyond a reasonable doubt that the defendant knew that his accomplice was armed and intended to commit an armed assault in a dwelling and that the defendant possessed the necessary intent to assist the accomplice in such an assault. [33-37]

At a murder trial, the judge did not err in denying the defendant's motion for a mistrial immediately after the judge had ordered certain hearsay statements the victim had made about the defendant struck from evidence with instructions to the jury to disregard what they had just heard, where the judge's prompt instructions were adequate to remedy any prejudice to the defendant. [37-38]

No reason appeared on the record of a murder trial for this court to exercise its power under G. L. c. 278, § 33E, to reduce the verdict or grant a new trial. [38]

INDICTMENT found and returned in the Superior Court Department on September 30, 1992.

The case was tried before *Vieri Volterra*, J.

*Roger A. Cox* for the defendant.

*Eric Neyman*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial the defendant was convicted of murder in the first degree as a joint venturer by reason of felony murder.[1] On appeal, the defendant contends that (1) the trial judge erred in denying the defendant's motion for a required finding of not guilty or in the alternative for a new trial based on the insufficiency of the Commonwealth's evidence; and (2)

---

[1]The underlying felony was armed assault in a dwelling.

the judge erred in denying the defendant's motion for a mistrial after the jury heard evidence later determined to be inadmissible. The defendant also requests that we exercise our power under G. L. c. 278, § 33E, to order a new trial. For the reasons set forth below, we affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with certain issues raised. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994); *Commonwealth* v. *Burnett*, 417 Mass. 740, 741 (1994). On the afternoon of September 2, 1992, the victim was having lunch with a business associate, Alex Loer, in the living room of the victim's apartment at 34 Farnsworth Street in the South Boston section of Boston. In response to a knock the victim opened the door and a still unidentified man forced his way into the apartment brandishing a gun. On entering, the gunman ordered both the victim and Loer to a bedroom located in the rear of the apartment. Loer passed through the bedroom doorway first, and fell to his knees with his back facing the doorway. Shortly thereafter, Loer heard a gunshot, looked over his shoulder, and found the assailant gone and the victim slumped over on the floor of the bedroom. Loer then telephoned the police, and they arrived at the scene minutes later.

At roughly the same time as the shooting, a woman was walking on Farnsworth Street toward a nearby parking garage. As the witness reached the intersection where Farnsworth Street crossed a "roughly paved" alley, she saw a man running quickly down the alley onto Farnsworth Street. This man approached an automobile that was parked in the alley in such a way that its driver was shielded from the witness's view. As the man began to open the automobile's passenger door, the witness heard him yell something to the driver which was "not intelligible" to her. The automobile began to move even before the man was completely inside and then proceeded down the alley away from Farnsworth Street "at a pretty good clip." The witness was able to observe both the automobile's license plate and its make and model before it fled the scene.

Because of the information furnished by the witness the police investigation focused on the defendant. In response to questioning the defendant told the police that he had been in Boston the week of the murder, but that he "wasn't familiar with the area."

On further questioning, the defendant said that on the day of the murder, "a guy jumped in his car, put a gun to his head, and told him to drive off slowly." Hearing this, the detectives seized the defendant's automobile, which the witness later identified as the automobile she observed on September 2, 1992.

On September 9, 1992, Boston police detectives returned to the defendant's residence to arrest him. After being read his Miranda rights, the defendant made several incriminating statements regarding his role in the shooting. One of the arresting officers, Detective Timothy Callahan, testified:

> "[The defendant] stated that he had intended to give us a call. He didn't know that [the victim] had died. He stated that he hasn't been sleeping regularly over it. He also stated that the guy never told him that he shot him, that the gun just went off. He told him that the gun went off, but never told him that anyone was killed. It wasn't until a few days after that that he realized that someone did get killed."

Detective Callahan also testified that, during the same conversation, the defendant "stated that they had just gone there to 'do' [the victim]," but that "it should have never happened, he should have never died."[2]

*The judge's denial of the defendant's motion for a required finding of not guilty and motion for a new trial.* The defendant's principal argument is that the judge erred in denying his motion for a required finding of not guilty.[3] In reviewing such a contention, "we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979).

---

[2]On cross-examination, defense counsel asked Detective Callahan, "In the same sentence, he said, 'we went to do him, but he wasn't supposed to be killed' or words to that effect. Is that what you say?" Detective Callahan answered, "Yes."

[3]Rule 25 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 896 (1979), states that "[t]he judge on motion of a defendant or on his own motion shall enter a finding of not guilty of the offense charged in an indictment or complaint . . . after the evidence on either side is closed if the evidence is insufficient as a matter of law to sustain a conviction on the charge."

In order to convict a defendant of murder as a joint venturer[4] the Commonwealth must establish that the defendant "was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement [was] willing and available to help the other if necessary." *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983).

It is primarily with respect to the "knowledge" requirement, that the defendant claims, that the Commonwealth's evidence was insufficient.[5] To satisfy this requirement in a case where armed assault in a dwelling is the underlying felony, the Commonwealth must first prove that the defendant knew that his accomplice was armed. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 (1994); *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 64 (1989). Second, the Commonwealth must demonstrate that the defendant knew that there was a "substantial likelihood" that his accomplice would commit the armed assault. See *Commonwealth* v. *Walsh*, 407 Mass. 740, 743 (1990); *Commonwealth* v. *Champagne*, 399 Mass. 80, 87 (1987). In examining the sufficiency of the Commonwealth's evidence regarding these two prongs, we must be mindful of the fact that "[a] person's knowledge or intent is a matter of fact which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial. . . . The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable . . . ." *Commonwealth* v. *Stewart*, 411 Mass. 345, 350 (1991), quoting *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). "Whether an inference is warranted

[4]Pursuant to G. L. c. 265, § 1, "[m]urder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree." Conviction of the crime for which the defendant was found guilty, armed assault in a dwelling, is punishable "by imprisonment in the state prison for life, or for a term of not less than ten years." G. L. c. 265, § 18A. Thus, the defendant was properly tried for murder in the first degree.

[5]The defendant appears to argue briefly that the Commonwealth presented insufficient evidence to establish that he was present at the crime scene. His location "four to five hundred feet away" from the apartment where the murder took place, he contends, places him "near" the crime scene. It is well settled, however, that individuals may be considered present for joint venture purposes even where they are only "in the vicinity of the crime." *Commonwealth* v. *Mahoney*, 405 Mass. 326, 329 (1989). See *Commonwealth* v. *Giang*, 402 Mass. 604, 608-609 (1988).

or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense." *Commonwealth* v. *Giang*, 402 Mass. 604, 609 (1988), quoting *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976).

Contrary to the defendant's assertions, the Commonwealth did present circumstantial evidence sufficient to satisfy both prongs of the "knowledge" requirement. With respect to the first prong, the defendant's own words — as recounted by Detective Callahan at trial — permitted the jury to conclude that he knew the assailant was armed. His statement that "*the* gun just went off" is particularly probative in that it implies some previous knowledge that the assailant had a gun when he entered the victim's apartment.[6] The jury could also infer that the defendant gained his knowledge of the gun prior to the murder.[7]

With respect to the second prong, the defendant's actions on the day of the murder furnished sufficient evidence for the jury to find that he possessed the necessary intent to assist in the armed assault in a dwelling. The Commonwealth presented evidence that the defendant had parked his automobile in an alley which was "not a major thoroughfare by any means" and was "surrounded by brick buildings." The defendant had parked so that only the rear portion of the automobile was visible from Farnsworth Street. This behavior closely resembles that of the defendant in *Commonwealth* v. *Stewart*, 411 Mass. 345 (1991).

---

[6]Webster's New Collegiate Dictionary 1199 (1980), defines "the" as "a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance."

[7]The jury could have reasonably inferred that the defendant knew his accomplice was armed based merely on the situation at hand. We have previously held that a jury may "infer knowledge [of a weapon] from the circumstances." *Commonwealth* v. *Watson*, 388 Mass. 536, 546 n.9 (1983). Specifically, where a defendant "apprehend[s] that the intended victim might resist," he "could suppose that the other actors might be furnished with weapons." *Commonwealth* v. *Ferguson*, 365 Mass. 1, 9 (1974). Here, the defendant himself stated that he and his accomplice had gone to the victim's apartment to "do" him. Though this term's precise meaning is by no means plain, the defendant's use of it hints that he knew some sort of confrontation was expected. His parking of his automobile in an obscured area during the murder only underscores this point. From this evidence, a jury could reasonably conclude that the defendant recognized the situation as one warranting his accomplice's carrying a weapon. Based on the aforementioned case law, such a recognition is enough for the jury to infer that in fact the defendant knew of that weapon.

There, the defendant was convicted as a joint venturer of murder in the second degree after acting as the getaway driver for an accomplice who had fatally shot the victim nearby. *Id.* at 345-346. On appeal to this court, the defendant contended that the judge erred in denying his motion for a required finding of not guilty because the Commonwealth had presented insufficient evidence regarding the defendant's intent. *Id.* at 349. In rejecting his claim, we cited evidence that the defendant's "automobile had been parked discreetly on a one-way side street near the scene of the murder." *Id.* at 351. This evidence, we concluded, was "indicative of prearrangement between the defendant and [the shooter], and tended to prove advance knowledge on the defendant's part." *Id.* at 352-353. Given this striking factual similarity between *Stewart* and the case at bar, we do not hesitate to conclude that the evidence warranted the finding that the defendant had sufficient intent to support the verdict of guilty.

The testimony regarding the defendant's flight from the crime scene was additional evidence of his criminal intent. The Commonwealth presented eyewitness testimony that the defendant's accomplice ran down the alley directly to the defendant's automobile, quickly yelling something as he hastily entered on the passenger side. The same witness testified that the driver then "proceeded at a pretty good clip" away from the crime scene, beginning to move the automobile even before his accomplice was completely inside. Again, the facts in this case almost mirror those of *Stewart*, where we found the fact that the defendant's "automobile instantly pulled away from the curb at high speed" highly indicative of his criminal intent. *Id.* at 351. Employing the same rationale in this case, it becomes clear that the Commonwealth's evidence — regarding both flight from the crime scene and the automobile's original location — sufficiently demonstrated the defendant's criminal intent to survive a motion for a required finding of not guilty.[8] See *Commonwealth* v. *Mandile*, 403 Mass. 93, 101 (1988) (evidence that

---

[8]As previously noted, the defendant argues in his brief that the judge also erred in denying his motion for new trial. It is well settled that "[a] motion for new trial . . . is addressed to the sound discretion of the trial judge." *Commonwealth* v. *Little*, 384 Mass. 262, 268-269 (1981). The judge's decision to deny such a motion "will not be reversed unless it is manifestly unjust . . . or unless the trial was infected with prejudicial constitutional error" (citations omitted). *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995), citing *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). In light of the previously

getaway driver "instantly drove off" with principals after armed robbery "evinc[es] knowledge of what had occurred in the victim's home"); *Commonwealth* v. *Giang*, 402 Mass. 604, 609 (1988) (jury "reasonably could infer the requisite mental state for a joint venture" where defendant "instantly drove off with the principals in the attempted robbery as they fled from the store").[9] Consequently, we affirm the judge's denial of the defendant's motion for a required finding of not guilty.

*The defendant's motion for a mistrial.* At trial, the judge erroneously permitted the victim's female companion to testify, over objection, regarding statements the victim had made to her about the defendant.[10] Immediately after the jury heard this testimony, the judge reversed himself, struck the testimony, and instructed the jury to disregard what they had just heard.[11] Defense counsel then moved for a mistrial, which the judge denied. On appeal, the defendant claims that the judge erred in denying his motion.

"Whether to declare a mistrial is within the trial judge's discretion." *Commonwealth* v. *Gallagher*, 408 Mass. 510, 517 (1990). See *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989). Where a party seeks a mistrial in response to the jury's

described evidence the Commonwealth presented at trial, we do not find the judge's denial to be "manifestly unjust." The defendant has likewise failed to highlight any constitutional flaw in the Superior Court proceedings.

[9] Also of notable significance was the Commonwealth's evidence regarding the defendant's own postarrest statements to Detective Callahan. In particular, his admissions that "*we* went to 'do' [the victim], but he wasn't supposed to be killed" and "the gun just went off" suggest that everything that occurred on September 2, short of the murder itself, was a product of joint action and planning. Considered alongside the Commonwealth's evidence of the defendant's flight, such admissions certainly would allow a jury reasonably to infer that the defendant possessed the required intent to commit armed assault in a dwelling.

[10] In doing so, the judge apparently relied on G. L. c. 233, § 65, which provides: "In any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay or as a private conversation between husband and wife, as the case may be, if the court finds that it was made in good faith and upon personal knowledge of the declarant." As this court has previously held, this statute is "not applicable to prosecutions for crime." *Commonwealth* v. *Gallo*, 275 Mass. 320, 336 (1931).

[11] Specifically, the judge told the jury: "Just to make it crystal clear, ladies and gentlemen, the statements that [the witness] previously made in respect to the feelings and thoughts of [the victim] towards [the defendant] are not admissible; and I strike them from the case, and I ask you to pay no attention to them."

exposure to inadmissible evidence, the judge may "correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant." *Id.* at 232. Such reliance on curative instructions stems from the notion that "[j]urors are expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982). Generally, as long as the judge's instructions are prompt and the jury do not hear the inadmissible evidence again, a mistrial is unnecessary. See *Commonwealth* v. *Gallagher, supra* at 517-518; *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983), and cases cited. Here, the judge instructed the jury to disregard the testimony immediately after the jury heard it. Furthermore, there was no reference to the improperly admitted testimony later in the trial. The judge's instructions were adequate to remedy any prejudice to the defendant. Consequently, the motion for a mistrial was properly denied.

*General Laws c. 278, § 33E.* Finally, the defendant contends that we should grant him a new trial pursuant to our power under G. L. c. 278, § 33E. The defendant bases this claim on the same grounds that he uses to support his earlier claims, namely that the Commonwealth presented insufficient evidence regarding the defendant's knowledge and intent, and that the jury's exposure to inadmissible testimony was an error uncured by the judge's instructions.

Under § 33E, we have the obligation to "review the whole case to determine whether there has been any miscarriage of justice in convicting the defendant of murder in the first degree." *Commonwealth* v. *Marquetty*, 416 Mass. 445, 452 (1993). In this case, no such miscarriage has occurred. The fact that much of the Commonwealth's evidence regarding the defendant's knowledge and intent is circumstantial does not render it insufficient under § 33E. "In cases in which [t]he evidence [is] largely circumstantial . . . it is not essential that the inferences drawn should be only necessary inferences. . . . It is enough that [the inferences] be reasonable and possible." *Commonwealth* v. *Robertson*, 408 Mass. 747, 755 (1990), quoting *Brown* v. *Commonwealth*, 407 Mass. 84, 89 (1990), *S.C.*, 414 Mass. 123 (1993). We decline to order a new trial pursuant to our power under G. L. c. 278, § 33E.

*Judgment affirmed.*