COMMONWEALTH *vs.* DARNELL HENDERSON.

No. 97-P-622.

Suffolk. October 16, 1998. - August 23, 1999.

Present: ARMSTRONG, KASS, & FLANNERY, JJ.[1]

*Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Joint Enterprise. Practice, Criminal,* Argument by prosecutor.

Evidence at the trial of indictments alleging assault with intent to murder and assault and battery with a dangerous weapon, along with reasonable inferences therefrom, was sufficient to warrant the jury's conclusion that the defendant was a joint venturer in the commission of the crimes. [613-615]

At the trial of indictments, the prosecutor's closing argument, viewed as a whole, was not improper. [615]

At the trial of indictments on a theory of joint venture, the judge's instructions to the jury adequately covered the element of knowledge. [615]

INDICTMENT found and returned in the Superior Court Department on September 27, 1994.

The case was tried before *James F. McHugh, III*, J.

*Beth L. Eisenberg* for the defendant.

*Joseph M. Makalusky*, Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant, Darnell Henderson, appeals from convictions of assault with intent to murder and assault and battery with a dangerous weapon. There was no evidence that Henderson committed the assault himself; the evidence was that the passenger in his car, Shawn Peters, who was tried jointly with Henderson, did so. Henderson's principal contention here is that the evidence was insufficient for his conviction as a joint venturer.

The evidence most favorable to the Commonwealth was the

---

[1]This case was argued before Justices Armstrong, Kass, and Flannery. Following the death of Justice Flannery, Justice Gillerman was added to the panel and participated in this decision.

testimony of the victim, Hollins, to this effect. Shortly after noontime on a Sunday in August, Hollins was riding a bicycle on Washington Street in the Dorchester section of Boston. A car driven by Henderson made a U-turn and pulled up next to him. Hollins had known Henderson for six years. They had argued in the past. Hollins did not know Peters, who was in the passenger seat. He had not seen him prior to that day. Hollins leaned his head into the vehicle through the open passenger window. He argued with the defendant for a couple of minutes. Hollins did not speak to Peters, nor did Peters speak to him.

The argument broke off, and Hollins rode across the street on the bicycle while the car remained parked on the opposite side. Hollins was across the street for "a minute or two," speaking to a friend. Then he saw Peters get out of the car with a gun in his hand. Peters walked across the street toward Hollins, carrying the gun at his side. Hollins asked Peters if he was going to shoot him. Peters, standing within one foot of Hollins, pointed the gun at Hollins' face and shot. Hollins "blanked out" momentarily[2] and fell. The shot, which entered his right cheek, blinded him temporarily. On regaining consciousness, Hollins heard a door slam, a car speeding off, and "everybody yelling, screaming, telling me to relax." There had been no cars in the area other than the one the defendant was driving. Hollins had regained his vision by the time of trial (he identified Henderson and Peters in the courtroom). A physician testified that Hollins suffered no brain damage from the shot.

On the basis of that testimony, the judge correctly ruled the evidence sufficient to convict Henderson as a joint venturer. It was he, not Peters, who had a quarrel with Hollins, compare *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988), and he who drove the car that sought Hollins out. Henderson's knowledge that Peters was armed could be inferred from the evidence that Peters was brandishing the gun when he got out of the car. Although Hollins could not see Peters's movements after the shooting, the jury could properly infer from the sounds Hollins heard that Peters reentered the car, slamming the door shut, and that Henderson then sped away. They could infer, moreover, that the two-minute span from the end of the argu-

---

[2] Hollins's testimony was that he "blacked out for a minute." The jury could reasonably infer that the blackout was of very short duration from the fact that the sounds Hollins described hearing after the shooting were sounds one would expect to hear in the immediate aftermath.

ment to Peters's deliberate crossing of the street, obviously intent on shooting Hollins, with Henderson waiting in the driver's seat, was inconsistent with an inference that Peters's act was one of sudden anger or impulse that Henderson had no reason to anticipate. It had the earmarks, rather, of a planned attack, a calculated extension of the quarrel between Henderson and Hollins. Compare *Commonwealth* v. *Stewart*, 411 Mass. 345, 351 & n.3 (1991).

That Henderson shared Peters's mental state was a question of fact for the jury, one "not susceptible of proof by direct evidence . . . [but only] by inference from all the facts and circumstances developed at the trial. . . . The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Longo*, 402 Mass. at 487, quoting from *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). "The line that separates mere knowledge of unlawful conduct and participation in it, is 'often vague and uncertain. It is within the province of the jury to determine from the evidence whether a particular defendant [has] crossed that line.' " *Commonwealth* v. *Cerveny*, 387 Mass. 280, 287 (1982), quoting from *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 250 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972).

This is closer in principle to *Commonwealth* v. *Stewart*, 411 Mass. at 350-352, and *Commonwealth* v. *Kilburn*, 426 Mass. 31, 35-37 (1997) — both cases in which a driver was found guilty as a joint venturer for an armed assault by the passenger — as well as to the *Longo* case, 402 Mass. at 487-488, than it is to *Commonwealth* v. *Mandile*, 403 Mass. 93 (1988), and *Commonwealth* v. *Walsh*, 407 Mass. 740 (1990), in both of which an inference of complicity was held to be unduly speculative. In *Commonwealth* v. *Mandile*, *supra* at 101, the court emphasized (1) the fifteen minutes that the passenger and the victim had been together alone in the victim's home after the passenger had left the car, (2) the absence of any evidence of hostility between the defendant and the victim, and (3) the absence of any evidence that the car driven by the defendant drove off immediately to make a quick getaway after the shooting. In *Commonwealth* v. *Walsh*, 407 Mass. at 745, there was no evidence that Walsh knew that Alkins had a knife until after Alkins had completed his stabbings of the victim, and, as emphasized by

the court, there was no evidence of any confrontation or hostility between Walsh and the victim before Alkins's attack on the victim. Walsh's evasive actions thereafter had little probative value as to his complicity in Alkins's murderous assault on the victim because he had simultaneously perpetrated his own brutal assault on another victim (with a beer bottle that Walsh had broken by cracking it over that victim's head), for which he was convicted. No comparable diffusion of motive complicated Henderson's post-shooting flight. See *Commonwealth* v. *Longo*, 402 Mass. at 489-490; *Commonwealth* v. *Stewart*, 411 Mass. at 353. Other cases relied on by Henderson are distinguishable. Nothing in the facts of *Commonwealth* v. *Smith*, 413 Mass. 275, 279-282 (1992), showed any hostility or other relationship between Smith and the victim that might have suggested participation by Smith in Lewis's shooting of the victim. In *Commonwealth* v. *Clark*, 363 Mass. 467, 469, 472-473 (1973), the principal's shooting of the victim appeared to be in spontaneous anger, extraneous to the heroin sale to the victim that the principal and Clark had tried to effect.

The prosecutor's closing argument, viewed as whole, was not improper. Much of the peroration of which Henderson complains was in response to the attempt by Peters's counsel to portray Hollins as a hardened drug dealer, whose testimony was not worthy of belief. It was not improper for the prosecutor to be concerned lest the jury adopt a "who cares" attitude. The unifying theme of the prosecutor's argument was that the case before the jury was that of the Commonwealth, not Hollins, and that the issue for the jury was not the character of Hollins but whether Henderson and Peters perpetrated the shooting. That was permissible argument. As to the claimed deficiency in the judge's charge: the knowledge element was adequately covered when the jury were instructed that they could not find Henderson guilty of assault and battery with a handgun unless convinced beyond a reasonable doubt that Henderson either had knowledge that Peters intended to commit the crime of assault and battery by means of the handgun or had the intent to carry out that crime himself.

*Judgments affirmed.*