NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12912

COMMONWEALTH vs. JULIO BAEZ.

Suffolk.     May 10, 2024. - July 23, 2024.

Present: Budd, C.J., Gaziano, Kafker, Wendlandt, & Dewar, JJ.

Homicide. Armed Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Joint Enterprise. Practice, Criminal, Required finding, Capital case. Evidence, Identification, Intent, Joint venturer, Inference, Identification. Identification. Intent.

Indictments found and returned in the Superior Court Department on April 2, 2015.

The cases were tried before Janet L. Sanders, J.

Rosemary Curran Scapicchio (Jillise McDonough also present) for the defendant.
Paul B. Linn, Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant appeals from his convictions of murder in the first degree on a theory of deliberate premeditation, armed assault with intent to murder, and assault and battery by means of a dangerous weapon causing serious

injury, each stemming from his role as the getaway driver after a shooting in the Charlestown section of Boston.  At around 9:40 P.M. on the evening of November 5, 2014, two men[1] (assailants) wearing hooded sweatshirts shot Ryan Morrissey and Jamie Lawton (collectively, victims) outside a convenience store, killing Morrissey and seriously injuring Lawton.  The assailants fled on foot, rounding a corner onto Salem Street, where the defendant waited in an Acura TL sedan owned by his mother.  Shortly after the shooting, witnesses saw the car slowly go up Salem Street, begin to turn left onto High Street, and then reverse, hitting a parked car.  The car was stationary at the top of Salem Street when the assailants reached the car and entered through the rear driver's side door and the rear passenger's side door.  After the assailants had entered the car, the car turned right onto High Street, going at about ten miles per hour when witnesses lost sight of it.

On appeal, the defendant argues that the trial judge erred in denying his motion for a required finding of not guilty because there was insufficient evidence that he was the driver of the car that helped the assailants escape the scene of the shooting, and that even assuming he was the driver, there was

---

[1] The Commonwealth alleged at trial that the assailants were codefendants Danilo Soto and Alexander Soto.  Both Danilo Soto and Alexander Soto were found not guilty by the jury.  Although the codefendants share a last name, they are not related.

insufficient evidence that he had knowledge of or shared the assailants' lethal intent. He also argues that the trial judge erred in declining to require the Commonwealth to present race-neutral reasons for challenging two Hispanic jurors during jury selection. The defendant further contends that expert testimony comparing paint found on the defendant's car with paint recovered from the parked car should have been excluded, and that the trial judge erred in providing certain jury instructions. We conclude that the evidence was legally insufficient to establish the defendant knew of or shared the lethal intent of the assailants and therefore reverse the defendant's convictions of murder in the first degree and armed assault with intent to murder. We also conclude that the evidence was insufficient to establish that the defendant knew that the assailants were armed with firearms, or that he shared the assailants' intent to use those firearms to assault the victims, and thus reverse his conviction of assault and battery by means of a dangerous weapon causing serious injury. Accordingly, we need not reach the remaining issues raised on appeal.

1. Background. We review the evidence in the light most favorable to the Commonwealth, reserving certain facts for our discussion of the legal issues.

On November 5, 2014, at around five minutes before the shooting, a witness saw two men, one wearing a light gray hooded sweatshirt and the other wearing a black sweatshirt, on the front stoop of a house on Phipps Street in Charlestown.  The men pulled up the hoods of their sweatshirts and left in the direction of Main Street.  At 9:38 P.M., two men wearing hooded sweatshirts passed by a convenience store located on Main Street between Sullivan Street and Salem Street.  The men wore their sweatshirt hoods up, with the drawstrings of the hoods tied tightly so that only small portions of their faces were visible. After walking past the store, the men turned right onto Sullivan Street.  Two minutes later, at 9:40 P.M., the men walked back toward the store from the direction of Sullivan Street with their hands in the pockets of their hooded sweatshirts.  Around that time, Jamie Lawton and Ryan Morrissey exited the store and stepped onto the sidewalk outside.  The two men in sweatshirts walked past the entrance to the store, and then turned and shot Lawton and Morrissey several times before running away in the direction of Salem Street.  Lawton survived, but Morrissey died as a result of his injuries.

At the time of the shooting, the defendant was driving his mother's car, a silver 2004 Acura TL sedan, on Salem Street, a one-way street that intersected with Main Street east of the convenience store.  Several witnesses, residents of Salem Street

and the surrounding area, looked out onto Salem Street after hearing gunshots and observed a dark-colored four-door sedan maneuvering on Salem Street near its intersection with High Street. The sedan slowly went up Salem Street, began to make a left turn onto High Street, and then reversed back onto Salem Street, striking a parked car, a blue Volkswagen Jetta. One witness took down a partial license plate number for the car after seeing it strike the parked car. She wrote down the number, "101KK," and later shared it with police. Shortly after the shooting, witnesses saw two men in hooded sweatshirts turn left onto Salem Street from the direction of the convenience store and run up the street.[2] The man in the light gray sweatshirt got into the back driver's side door of the car, and the man in the black sweatshirt got into the back door on the passenger's side. After the men had entered the car, the car was driven away, making a right turn onto High Street while going at around ten miles per hour.

After investigating the scene and speaking with witnesses, police identified the Acura TL owned by the defendant's mother as the likely getaway car. Later that night, police found the Acura parked on Medford Street in Charlestown, near the Bunker

---

[2] Salem Street is a steep hill, with the bottom of the hill at the intersection with Main Street and the top at the intersection with High Street. The defendant stopped the car at the top of the hill near the intersection with High Street.

Hill public housing development where the defendant's mother lived. The license plate number for the Acura was "181XK2." The police went to the apartment where the defendant's mother lived and obtained the key to the Acura from the defendant's friend Yaritza Figueroa, who had been given the key by the defendant earlier that night and had been instructed to return the key to the defendant's mother. While in the courtyard of the housing development, Boston police Detective Frank McLaughlin encountered the defendant and asked the defendant if he had been driving the Acura. The defendant responded that he had been in possession of the Acura from 2 P.M. to around 10 or 10:30 P.M.

The defendant was tried jointly with Danilo Soto and Alexander Soto, whom the Commonwealth alleged were the assailants who shot the victims near the convenience store. At the close of the Commonwealth's evidence, defense counsel moved for a required finding of not guilty, which was denied by the trial judge.[3] The jury acquitted the defendant's alleged coventurers, but convicted the defendant of murder in the first degree on a theory of deliberate premeditation, armed assault with intent to murder, and assault and battery by means of a dangerous weapon causing serious injury.

---

[3] Neither the defendant nor either of his codefendants introduced evidence at trial.

2.  Discussion.  On appeal, the defendant argues that there was insufficient evidence to prove murder in the first degree under a theory of deliberate premeditation.  Therefore, he argues that his conviction of murder in the first degree must be reversed.  We conclude that although there was sufficient evidence to prove that the defendant served as the getaway driver for the two assailants, there was insufficient evidence that he knew of or shared the assailants' lethal intent.  See Baxter v. Commonwealth, 489 Mass. 504, 510 (2022); Commonwealth v. Gonzalez, 475 Mass. 396, 414 (2016).  Similarly, there was insufficient evidence to prove beyond a reasonable doubt that the defendant knew the assailants were armed with firearms or that they intended to use those firearms against the victims, as would be required to support a conviction of assault and battery by means of a dangerous weapon on a joint venture theory.  See Commonwealth v. Walsh, 407 Mass. 740, 742-743 (1990).  Accordingly, his convictions must be reversed.

When reviewing claims of insufficient evidence, we assess the evidence in the light most favorable to the Commonwealth "to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt."  Commonwealth v. Robinson, 493 Mass. 303, 307 (2024), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).  "The evidence may be direct or circumstantial, and we draw all

reasonable inferences in favor of the Commonwealth." Commonwealth v. Watson, 487 Mass. 156, 162 (2021), quoting Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

a. Murder in the first degree. To prove the defendant guilty of murder in the first degree as a joint venturer, the Commonwealth was required to "prove beyond a reasonable doubt that 'the defendant knowingly participated in the commission of the crime charged, and that the defendant had or shared the required criminal intent.'" Watson, 487 Mass. at 162, quoting Commonwealth v. Britt, 465 Mass. 87, 100-101 (2013). "In the circumstances here, this required a showing that the defendant was the driver of the suspect vehicle, that [he] knew [his] passenger[s] intended to kill the victim, and that [he] shared this intent." Baxter, 489 Mass. at 508, quoting Gonzalez, 475 Mass. at 406-407.

i. Identification. The defendant first argues that the evidence presented at trial was insufficient for the jury to find beyond a reasonable doubt that he was the driver who helped the assailants flee the scene of the crime. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence at trial to establish that the Acura TL owned by the defendant's mother was the getaway car, and that the defendant was the driver. See Baxter, 489 Mass. at 508-509.

Tiffany Ramos, a friend of the defendant, testified that shortly after the shooting, the defendant told her that he was the driver of the car involved in the shooting in Charlestown, but that he had nothing to do with the shooting itself.[4] The defendant also told McLaughlin that he had been in possession of his mother's Acura TL from around 2 P.M. until 10 or 10:30 P.M. on the night of the shooting. A witness testified that although Salem Street was somewhat poorly lit on the night of the shooting, she took down a partial license plate number for the dark-colored four door sedan that she saw two men in hooded sweatshirts enter shortly after the shooting. The witness testified that the partial plate she had recorded was "101KK." This partial plate number could easily have been mistaken for the license plate number for the Acura TL owned by the defendant's mother, "181XK2." Finally, the defendant's fingerprints were recovered from the front driver's side door of the Acura. All this evidence was sufficient for the jury to find that the defendant was the getaway driver. Compare Baxter, 489 Mass. at 509 (sufficient evidence for jury to find defendant

---

[4] On appeal, the defendant argues that Tiffany Ramos was not a credible witness because she had not mentioned the defendant's statement during grand jury proceedings or in many of her earlier interviews with police. However, viewing the evidence in the light most favorable to the Commonwealth, as we must, a jury could have found credible Ramos's explanation that she had lied to the police in the past because she was scared, but was telling the truth at trial.

was driver of car containing shooter where car belonged to defendant's girlfriend and he had permission to drive it, car had left girlfriend's driveway shortly before shooting, and video footage showed person resembling defendant driving car); Watson, 487 Mass. at 162-163 (sufficient evidence for jury to find defendant was driver of suspect vehicle where he borrowed keys to vehicle from his girlfriend day before murder occurred, and defendant's cell phone, keys, and fingerprints were found in vehicle).

ii. Knowledge and intent. The defendant presents a much stronger argument, however, that the evidence at trial was insufficient to establish that he knew the assailants intended to kill the victims or that he shared that intent. See Baxter, 489 Mass. at 509-510, quoting Gonzalez, 475 Mass. at 414 ("to support conviction of murder in first degree on theory of joint venture, 'the Commonwealth was required to prove, beyond a reasonable doubt, not only that the defendant drove the suspect vehicle, but that [he] knew [his] passenger[] intended to kill the victim and that [he] shared [that] intent'"). The Commonwealth asserts that the manner by which the defendant was seen maneuvering his vehicle after the shooting was sufficient evidence to prove that the driver knew of and shared the lethal intent of the assailants. Because the jury could only have come to such a conclusion through the "piling of inference upon

inference or conjecture and speculation," Commonwealth v. Mandile, 403 Mass. 93, 94 (1988), we disagree.

In Gonzalez, 475 Mass. at 416-418, we reviewed our case law on "proof that [a] defendant knew of and shared her coventurers' lethal intent" and concluded that the Commonwealth had failed to introduce sufficient evidence to show that the defendant, who the Commonwealth alleged had driven shooters to and from the scene of a lethal shooting, shared the shooters' lethal intent. There, the Commonwealth introduced evidence that, inter alia, the defendant had motive to kill the victim, that the perpetrators shot the victim "immediately after leaving the suspect vehicle," and that the suspect vehicle, after dropping off the shooters, maneuvered in such a way that it was able to retrieve the shooters after they killed the victim. Id. at 415. Nonetheless, we concluded that even if the evidence had been sufficient to show that the defendant knowingly participated in the attack on the victim, "there was no evidence that she knew of or shared the coventurers' intent that the attack be deadly, as required for a conviction of deliberately premeditated murder by way of joint venture," and accordingly reversed the defendant's conviction. See id. at 415-416, 418. See also Mandile, 403 Mass. at 100 (evidence of shared lethal intent legally insufficient where defendant participated in stealing guns, was present during commission of murder, knew passenger

was armed, drove getaway car, disposed of murder weapon, and made inconsistent statements to police).

Our recent decision in Baxter, where we also concluded evidence was insufficient to sustain a conviction of murder in the first degree, bears many similarities to the present case and is therefore instructive on the issue of lethal intent. In Baxter, 489 Mass. at 506, the defendant, driving his girlfriend's car, picked up two passengers and then followed the victim as the victim walked down a street. The car "went past [the victim] and stopped along the curb on the side of the street where he was walking" and "waited about eighteen seconds while the victim walked toward it on the sidewalk. As the victim approached the car, it pulled away from the curb and traveled a short distance" before turning onto a side street. Id. Forty-five seconds later, as the victim walked past the side street, one of the defendant's passengers approached the victim and shot the victim at least six times. Id. The shooter ran back to the defendant's car and entered it, and the car sped away. Id.

In Baxter, as here, the Commonwealth argued that the evidence of how the defendant maneuvered the vehicle was sufficient to prove that he knew of and shared the lethal intent of his coventurer. Id. at 510. We disagreed, reasoning that

> "while the evidence of the defendant's maneuvering of the vehicle may have allowed the jury to infer that the defendant knew of and shared the passenger's intent to assault the victim, it fail[ed] to sustain a reasonable inference, beyond a reasonable doubt, that he shared the passenger's intent that the attack be deadly, as required for a conviction under a joint venture theory."

Id. We emphasized that there was no direct evidence that the defendant intended that the victim be killed. Id. There was also "no evidence that the defendant heard the passenger express lethal intent or that he saw the passenger do anything to demonstrate lethal intent, such as displaying a firearm before the shooting." Id. at 511. Additionally, "there was no evidence that the defendant saw or joined the shooter during the commission of the shooting." Id. Finally, we concluded that the defendant's actions did not "by their nature demonstrate a shared lethal intent." Id.

In the present case, there appears to be even less evidence of the defendant's lethal intent than was present in Baxter. Here, as in Baxter, there was no direct evidence that the defendant intended that the victims be killed. See Baxter, 489 Mass. at 510. Compare Commonwealth v. Marrero, 459 Mass. 235, 238 (2011) (defendant told victim, "I'm going to kill you"). There was also no evidence that the defendant had any knowledge that the assailants were in possession of firearms, or that they had communicated to the defendant an intent to use those firearms. Compare Commonwealth v. Sosa, 493 Mass. 104, 116-117

(2023) (defendant's shared lethal intent could be inferred where defendant "had ample opportunity to observe [coventurer's] gun," stood with coventurer for several minutes as coventurer pointed gun at victim and victim's girlfriend, and defendant had supplied gun and ammunition); Commonwealth v. Bonner, 489 Mass. 268, 279 (2022) (defendant standing next to shooter, who continued to aim gun at victim after shooting, was probative as to defendant's shared intent to kill victim); Commonwealth v. Reaves, 434 Mass. 383, 386-387, 392-393 (2001) (defendant present during planning of drive-by shooting while guns were nearby, rode in vehicle with shooters during killing, and assisted in disposing of weapons after killing); Commonwealth v. Stewart, 411 Mass. 345, 351 (1991) (defendant driver's coventurer shot and killed cat from passenger seat of defendant's car hours before murder).  Additionally, the defendant did not see or join the assailants during the commission of the shooting.  Compare Baxter, supra at 511; Mandile, 403 Mass. at 101, quoting Commonwealth v. Soares, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979) (where defendant drove passenger to victim's house and passenger killed victim while alone in home with victim for ten to fifteen minutes, no shared lethal intent between defendant and passenger could be drawn from defendant's "knowledge of the circumstances").

The Commonwealth argues that the maneuvering of the car by the defendant after the shooting was nonetheless sufficient evidence to demonstrate the defendant's lethal intent. Specifically, the Commonwealth contends that the defendant began moving the car after hearing gunshots because he knew his coventurers were armed and intended to shoot the victims, and understood the gunshots were his signal to get ready to leave the area to avoid detection. This argument overstates the Commonwealth's evidence and requires the "piling of inference upon inference" to conclude that the defendant knew of and shared the assailant's lethal intent. See Gonzalez, 475 Mass. at 415, quoting Commonwealth v. Swafford, 441 Mass. 329, 343 (2004).

As a preliminary matter, a finding that the defendant's car was parked on Salem Street and began moving only after the shooting is itself an inference; witnesses looked out onto Salem Street after the shooting and saw the suspect vehicle driving slowly up the street, but there was no evidence introduced regarding whether the sound of gunfire prompted the movement of the car. Compare Baxter, 489 Mass. at 506-507 (insufficient evidence of lethal intent where car driven by defendant followed victim down street, stopped near sidewalk and waited for victim to pass by on foot, and then passed victim and turned onto side street, allowing shooter to exit car seconds before victim was

killed). Even assuming the Acura was parked on Salem Street and did not begin moving until the shooting occurred, the Commonwealth's theory requires the inference, on the basis of the car's maneuvers alone, that before hearing the gunfire, the defendant knew his coventurers were in possession of firearms, that they intended to use those firearms in a deadly attack, and that the defendant shared their intent.

Here, the evidence was not sufficient to establish beyond a reasonable doubt that the defendant had knowledge before the shots were fired that the passengers were armed and intended to shoot the victims, or that the defendant shared their intent. Although the evidence of the car's maneuvering after the gunshots may have been sufficient to support a conviction of accessory after the fact, see Baxter, 489 Mass. at 511-512, the maneuvering did not, without more, "demonstrate a shared lethal intent" as would be required for a conviction of murder in the first degree, see id. at 511; Gonzalez, 475 Mass. at 416. Compare Watson, 487 Mass. at 163-164 (sufficient evidence that defendant driver shared passenger's lethal intent where defendant brought passenger to scene of murder, allowed passenger to approach victim's vehicle from behind, blocked street so that other vehicles could not interfere, drove next to passenger immediately after passenger shot victim, allowed passenger to get in car, and drove away); Commonwealth v.

<u>Tavares</u>, 471 Mass. 430, 432-433 (2015) (sufficient evidence of lethal intent where defendant brought gun to scene, chambered bullet, and pointed it at victim's companions); <u>Britt</u>, 465 Mass. at 88-89 (defendant brought gun to scene and fired). Accordingly, the defendant's conviction of murder in the first degree must be reversed.[5]

b. <u>Assault and battery by means of a dangerous weapon</u>. Next, we turn to the defendant's conviction of assault and battery by means of a dangerous weapon causing serious injury, in violation of G. L. c. 265, § 15A, in connection with the nonlethal shooting of Lawton. "Assault and battery by means of a dangerous weapon causing serious bodily injury requires the Commonwealth to prove that the defendant intentionally touched the victim, however slightly; the touching was unjustified; the touching was done with an inherently dangerous weapon or an object used in a dangerous fashion; and the touching caused serious bodily injury." <u>Commonwealth</u> v. <u>Vick</u>, 454 Mass. 418, 432 (2009). Because the defendant was convicted on a joint venture theory, the evidence must show that the defendant

---

[5] For the same reasons, we also conclude that the defendant's conviction of assault and battery with intent to murder -- which requires proving that the defendant "assaulted the victim while armed with a dangerous weapon and . . . the specific intent to cause the victim's death" -- was not supported by sufficient evidence of the defendant's shared lethal intent and thus must be reversed. See <u>Commonwealth</u> v. <u>Vick</u>, 454 Mass. 418, 432 (2009).

knowingly participated in the commission of the assault and battery, knew at least one of his coventurers was armed with a dangerous weapon, a firearm, and shared his coventurer's intent to use that weapon to cause a battery.  See Watson, 487 Mass. at 162 (joint venture theory requires evidence that "defendant knowingly participated in the commission of the crime charged, and . . . had or shared the required criminal intent" [citation omitted]); Britt, 465 Mass. at 100 ("The Commonwealth [bears] the burden of proving . . . that a joint venturer had knowledge that a member of the joint venture had a weapon where the conviction on a joint venture theory is for a crime that has use or possession of a weapon as an element").

As explained supra, the evidence in this case, viewed in the light most favorable to the Commonwealth, supports an inference that the defendant was the getaway driver.  However, there was no evidence that, before the murder, the defendant knew the assailants were in possession of firearms, or that the assailants intended to use those firearms to harm the victims. Compare Walsh, 407 Mass. at 742-745 (insufficient evidence of assault and battery by means of dangerous weapon on joint venture theory where defendant warned "there was going to be trouble"; defendant and coventurer spoke privately "for a few minutes," potentially planning attack; but there was no evidence that defendant knew coventurer was armed with knife until after

coventurer stabbed victim, and there was no evidence of animosity between defendant and victim before coventurer's attack). Nor was there any evidence that the defendant himself had any intent to harm the victims. Compare Commonwealth v. Henderson, 47 Mass. App. Ct. 612, 613 (1999) (sufficient evidence to convict defendant of assault and battery by means of dangerous weapon on joint venture theory, where defendant drove car that sought out victim; defendant and victim argued for one to two minutes; passenger, who had had no quarrel with victim, exited car and shot victim before running back to car; and car sped away). The Commonwealth nonetheless argues that the defendant picking up the assailants after the shooting, without more, allows the inference that before the shooting, he knew the assailants were armed with firearms, knew the assailants intended to use the firearms to commit a battery, and shared their intent. This line of reasoning, as explained above, requires too many inferential leaps for a jury to conclude beyond a reasonable doubt, on the basis of the evidence presented at trial, that the defendant was guilty of assault and battery by means of a dangerous weapon without resorting to conjecture and speculation. See Walsh, supra. Accordingly, the defendant's conviction of assault and battery by means of a dangerous weapon must also be reversed.

3. <u>Conclusion</u>. Because we conclude that the evidence was legally insufficient to support the defendant's convictions of murder in the first degree, armed assault with intent to murder, and assault and battery by means of a dangerous weapon, the judgment of conviction is reversed, the verdicts are set aside, and the case is remanded to the Superior Court for entry of a required finding of not guilty.

<u>So ordered</u>.